ALBERT MILLER AND GEORGE LEWIS v. FROST'S DETROIT LUMBER & WOODEN WARE WORKS.

*Principal and agent—Authority to purchase lumber.*

In this case it is held that the alleged agent of defendant had no authority to purchase lumber of plaintiffs, for the expense of moving and inspecting which suit is brought.

Error to Wayne.   (Jennison, J.)   Argued April 26, 1887. Decided June 23, 1887.

Assumpsit.   Plaintiffs bring error on judgment in their favor for a portion of their claim.   Affirmed.   The facts are stated in the opinion.

*H. E. Spalding,* for appellants.

*Moore & Moore,* for defendant.

MORSE, J.   The declaration in this cause is filed to recover the expense of moving and inspecting lumber, caused by the refusal of the defendant to accept the same.   The circuit judge directed the jury to allow only the cost of inspection. The plaintiffs bring error.

It is claimed by the defendant that—

1. The contract was void under the statute of frauds.
2. It was void for want of authority in the agent, Gray, such authority having been revoked before the making of the contract.
3. There was no obligation to pay expenses arising from plaintiffs' attempt to execute a void contract.

The defendant is a manufacturer of wooden-ware at Detroit, Michigan.   James Gray testified that, during the year 1885, he lived at Bay City, Michigan, and that his business was that of a purchasing agent under the name of the Peninsular Lumber Company.   In July, 1885, one Morrison, an agent of defendant, after some negotiation, said he would recommend him to defendant to do its business in Bay City. He thereupon had some correspondence with defendant, and commenced buying for the corporation.   Between August 7 and October 24, 1885, he purchased at Bay City, and shipped to Detroit for defendant, seven or eight lots of lumber.   He bought upon his own judgment, without consulting defendant, and defendant never complained of his exercising such discretion.

He received, on the seventh of October, 1885, the following letter from defendant:

"We now need a cargo of white pine lumber.   Have expected to receive B. L. of the Tawas lot from Whitney for some days.   Please give this matter your prompt attention. An early report will oblige,
    "Respectfully yours,
"FROST'S DETROIT LUMBER & WOODEN WARE WORKS.
    "Per M. FROST, Pt."

On the twenty-third of the same month he examined a lot

of plaintiffs' lumber as a possible purchase for defendant, and on the twenty-fourth received from it the following letter:

"DETROIT, MICH., 10–23–1885.
"PENINSULAR LUMBER CO.,
        "Bay City, Mich.,—

"*Dr. Sirs:* We are through with the scaling and selecting of the last cargo but one that you shipped us, and have footed it up at the selections, respective values here, and have gone into the last cargo far enough to fully satisfy us that there is no money for us in that quality of lumber. We have received and completed the inspection and selection, and find 20 per cent. more profitable to us than the last cargo but one from you, and the last one does not turn out as well. Consequently we desire no more lumber from your market until we can get better bargains certainly.

"Very respectfully,
"FROST'S DETROIT LUMBER & WOODEN WARE WORKS.
"Per M. FROST, Pt."

During the same day, he, with one of his own inspectors, made a further examination of the lumber of plaintiffs, and upon such examination concluded that said lot of lumber was worth several dollars per thousand more than that complained of in the above letter, which was bought at about the same price as that put upon this, and that it was a better bargain. He thereupon contracted orally for the purchase of it on behalf of defendant at $8, $16, and $35 per thousand for culls, common, and uppers, respectively; the lumber to be delivered on plaintiffs' dock front, the inspection fees to be borne equally by the parties.

Sunday, October 25, he wrote the following letter, and mailed it same day. He dated it the twenty-sixth:

"BAY CITY, MICH., October 26, 1885.
"FROST'S DET. LUMBER & WOODEN WARE W'KS,
        "Detroit,—

"*Gentlemen:* We have this day concluded arrangements for the purchase from Miller & Lewis, of this city, of about 200 M. ft. of good, log-run, white pine lumber, dry, at $8, $16, and $35 per M., and expect to forward same the latter part

of the present week. However, unless we find it a fair lot for the price when we come to inspect it, we will stop. Will try and forward at same time the shorts referred to some time ago. Hoping above will meet your approval, we are

            "Yours truly,
                "PENINSULAR LUMBER CO."

He received no reply to this, and on Wednesday, the twenty-eighth, directed the plaintiffs to begin the delivery of the lumber. It was then inspected, and hauled by wagons to the dock front, and there piled in a separate place from other lumber.

After the completion of the delivery, Gray received a letter from defendant, written the twenty-eighth of October, but mailed November 3, notifying him not to ship any more pine lumber. Gray then wrote a long letter setting forth in detail his bargain with plaintiffs, and the delivery of the lumber. Defendant telegraphed back that it could not receive the lumber, and wrote a letter to the same effect. Gray then notified plaintiffs that defendant would not take the lumber, and they said it was immaterial whether defendant took it not, but they should require pay for the expense of placing it on the dock and moving it back again. Gray wrote defendant to this effect.

The defendant produced Milton Frost, its president, as a witness, who testified that Gray had no general authority to buy lumber for it, and that the lot of lumber in question was bought at a higher price than that purchased by Gray of which the defendant complained in its letter of October 23, 1885.

In the view that I take of this case, it is not necessary to consider the question whether or not this contract came within the statute of frauds. From Gray's own testimony it does not appear that he had any authority to purchase this lumber. Before he made any arrangement for the purchase of plaintiffs' lumber, he received the letter of defendant, advising him, in effect, that the company did not desire him to pur-

chase any more lumber on its account unless he could certainly obtain better bargains. It does not appear anywhere that the defendant gave him unlimited or even general authority to purchase lumber. The most that can be made of it is that he purchased several lots for it which were received and accepted. He evidently acted upon this letter of October 23 as a direction to him not to send any more lumber unless it was advised by the defendant. After concluding his bargain with plaintiffs, he wrote to defendant informing it of the purchase, and asking if it would take the lumber. Waiting only two days, and without any reply, he commenced to receive the lumber for defendant. This he had no authority to do. It follows, therefore, that the defendant never authorized the purchase of this lumber, and it did no act after the purchase in ratification of the same. The defendant, therefore, was responsible for none of the expense,—not even the inspection of the lumber. As it has not appealed from the judgment, the same must be affirmed as it stands, with costs to defendant.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J. In my opinion there was sufficient authority made out to bind defendant, and I think plaintiffs should recover.