Young, J.
I believe this Court must determine whether a preinjuiy liability waiver signed by a parent on behalf of his child is enforceable under the common law and, if not, whether this Court should change the common law to enforce such a waiver. I would hold that a parental preinjury waiver is unenforceable under Michigan’s common law because, absent special circumstances, a parent has no authority to bind his child by contract. I would further decline to change the common law rule.
While this Court unquestionably has the authority to modify the common law,[1] such modifications should be made with the utmost caution because it is difficult for the judiciary to assess the competing interests that may be at stake and the societal trade-offs relevant to one modification of the common law versus another in relation to the existing rule.
*232 Ironically, defendant has consistently denied that the common law explicitly precluded use of parental preinjuiy waivers. As a result, defendant has never advocated a specific change in the common law, much less provided the Court with any analytic framework concerning such an alternative rule or any meaningful assessment of possible consequences that might attend a change in the existing rule. Particularly in light of the historic duration of the common law rule generally precluding parental waivers, and because the proponent requiring the change has essentially failed to provide any critical argument and analysis in support of the change, I would decline to alter the existing rule. [2] Accordingly, I would affirm the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.[3]
*233 I. FACTS AND PROCEDURAL HISTORY
The underlying facts are simple and likely familiar to many parents with young children. Five-year-old Trent Woodman’s parents had his birthday party at Bounce Party, which defendant Kera LLC operates and which is an indoor play area that contains inflatable play equipment. Before the party, Trent’s father, Jeffrey Woodman, signed a liability waiver on Trent’s behalf. The waiver provided in pertinent part:
THE UNDERSIGNED, by his/her signature herein affixed does acknowledge that any physical activities involve some element of personal risk and that, accordingly, in consideration for the undersigned waiving his/her claim against BOUNCE PARTY, and their agents, the undersigned will be allowed to participate in any of the physical activities.
By engaging in this activity, the undersigned acknowledges that he/she assumes the element of inherent risk, in consideration for being allowed to engage in the activity, agrees to indemnify and hold BOUNCE PARTY, and their agents, harmless from any liability for personal injury, property damage or wrongful death caused by participation in this activity. Further, the undersigned agrees to indemnify and hold BOUNCE PARTY, and their agents, harmless from any and all costs incurred including, but not limited to, actual attorney’s fees that BOUNCE PARTY, and their agents, may suffer by an action or claim brought against it by anyone as a result of the undersigned’s use of such facility.
*234 Participant:_Signature:_
PRINTED NAME Parent or Legal Guardian’s signature if participate [sic] is under age 18.
Date:_
BE SURE YOU COMPLETE THIS CARD AND SEND IT WITH THE PARTY GUEST!
Mr. Woodman signed the form as the parent and Trent’s name was printed on the form as the “participant.”[4]
During the party, Trent jumped off a slide and broke his leg. Trent, by his mother, Sheila Woodman, as next friend, filed suit against defendant, alleging negligence, gross negligence, and violation of the Michigan Consumer Protection Act (MCPA).[5] Defendant sought summary disposition, arguing, in pertinent part, that plaintiffs claims were barred by the liability waiver. Plaintiff filed a cross-motion for summary disposition, arguing that the waiver was invalid as a matter of law because a parent cannot waive, release, or compromise his child’s claims. The trial court ruled that the waiver barred plaintiffs negligence claim,[6] but not plaintiffs gross negligence or MCPA claims.
*235 Plaintiff appealed the waiver issue, and defendant appealed the gross negligence and MCPA issues. The Court of Appeals reversed and held that the waiver was invalid to bar the negligence claim.[7] The lead opinion, authored by Judge TALBOT, provided a thorough discussion of the validity of parental waivers in foreign jurisdictions as well as under Michigan law. The lead opinion concluded that under Michigan common law, “ ‘a parent has no authority merely by virtue of the parental relation to waive, release, or compromise claims of his or her child.’ ”[8] Thus, the lead opinion concluded, “the release signed on behalf of [Trent] cannot be construed as valid”[9] and “the designation or imposition of any waiver exceptions is solely within the purview of the Legislature.”[10] Judges BANDSTRA and SCHUETTE “reluctantly” concurred, noting their hope that this Court or the Legislature would address the *236 issue and change the common law to permit a parent to waive the tort claims of their minor children.[11]
Defendant sought leave to appeal, and this Court granted defendant’s application, limited to considering “whether the parental preinjury liability waiver was valid and enforceable.”[12]
II. STANDARD OF REVIEW
This Court reviews de novo the grant or denial of summary disposition.[13]
III. DISCUSSION
Defendant seeks to have this Court enforce the parental preinjury waiver that Mr. Woodman signed on behalf of his son. As stated, I believe that this Court must determine whether a parental preinjury waiver is enforceable under the common law and, if not, whether we should exercise our authority to change the common law and enforce such a waiver.
A. THE COMMON LAW
A parental preinjury waiver is a contract. Mr. Woodman purportedly signed the contract on behalf of his son. Consequently, defendant necessarily asserts that the contract is enforceable against Trent because Mr. Woodman had authority to bind his son to the contract.
The well-established Michigan common law rule is that a minor lacks the capacity to contract.[14] It is undis *237 puted that if five-year-old Trent had signed the waiver, defendant could not enforce the waiver against him unless Trent confirmed it after he reached the age of majority.[15]
*238 At issue is whether a minor can be bound by a contract signed on his behalf by a third party.[16] Specifically, can a parent bind his child by contract if the child could not otherwise be bound? Defendant insists that, under the common law, a parental waiver is enforceable to bar the claim of a minor child. However, the Michigan common law rule is clear: a guardian, including a parent, cannot contractually bind his minor ward.[17]
That point of law was firmly established more than 130 years ago by this Court in Armitage v Widoe.[18] In that case, the plaintiff was a minor when his father signed a land purchase contract on behalf of his son. After reaching majority, the plaintiff sought to disaffirm *239 the contract and recover the money his father had paid toward the purchase price on his behalf. Justice COOLEY, writing for a unanimous Court, held that the plaintiff had no interest in the contract because his father was without authority to bind him to the contract:
Had the infant in the first place undertaken to make another his agent to enter into the contract for him, the appointment would not have been valid. On the authorities no rule is clearer than that an infant cannot empower an agent or attorney to act for him. But if he cannot appoint an agent or attorney, it is clear he cannot affirm what one has assumed to do in his name as such. He cannot affirm what he could not authorize. It would be extraordinary if a party who has no power to do a particular act could yet do it indirectly by the mere act of adoption. Such a doctrine would deprive the infant wholly of his protection; for one has only to change the order of proceeding, assume to act for the infant first and get his authority afterwards, and the principle of law which denies him the power to give the authority is subverted. But such a doctrine is wholly inadmissible. The protection of infancy is a substantial one, and is not to be put aside and overcome by indirect methods.[19]
In Lothrop v Duffield,[20] an attorney who represented several infants in obtaining shares of their grandfather’s estate sought to recover his fee from the minors’ estates. This Court held that the attorney could not recover directly from the minors’ estates because
[w]hatever contract relations he had were with their guardian, who could not bind the infants personally or their estate by contract (except by authority of the probate court, in accordance with law), so as to subject their estates to claims filed by third parties for expenses incurred by the guardian.[21]
*240 This Court set forth ample authority supporting the proposition that the guardian was without authority to bind the minors to a contract.[22]
The fact that the guardian in the instant case is the child’s father does not alter this bedrock legal principle. Parents, as natural guardians of a child,[23] enjoy the same authority over a child as legal guardians.[24] Indeed, in Power v Harlow,[25] Justice THOMAS M. COOLEY made clear that a parent’s authority is limited to the care and custody of his child and that a parent is without authority to waive the rights of the child. In Power, the plaintiff child was injured while playing with an explosive on the defendant’s property. The defense sought to use the mother’s admission that the child had been warned of the danger as an admission binding on the child. The trial court held that the statement was inadmissible, and Justice COOLEY, writing for the Court, affirmed:
The natural guardian has no power to admit away the rights of the ward whose person is committed to his custody. He is guardian of the person only, having no control of any estate the ward may possess, and could not be given a control except on judicial proceedings and after giving security for responsible care. This being so, it cannot be plausibly claimed that by an irresponsible admission he *241 may deprive his ward of important rights. A right of action is as much property as is a corporeal possession, and, in the case of a minor, is protected by the law in the same way and under the same securities. The mother could not release it even for full consideration and by the most formal instrument-, much less, therefore, could she, by mere word of mouth, when not under oath, or otherwise chargeable with responsibility, destroy his right of action by her admissions.[26]
The longstanding and undisturbed common law rule that a parent lacks authority to bind his child by contract[27] was recently acknowledged by this Court in a case in which the Legislature had abrogated the general common law rule in the medical malpractice context. In McKinstry v Valley Obstetrics-Gynecology Clinic, PC,[28] the pregnant mother signed a medical waiver requiring arbitration of any claim on behalf of her unborn child. However, the mother contested the validity of that waiver after her child was injured during delivery. The Court considered the effect of MCL 600.5046(2) (since repealed by 1993 PA 78), which provided:
*242 A minor child shall be bound by a written agreement to arbitrate disputes, controversies, or issues upon the execution of an agreement on his behalf by a parent or legal guardian. The minor child may not subsequently disaffirm the agreement.
This Court concluded that the statute mandated that the arbitration agreement signed by the mother bind her child. In so doing, we acknowledged that the agreement would not have been binding under the general common law rule:
Our interpretation of [MCL 600.5046(2)] is a departure from the common-law rule that a parent has no authority to waive, release, or compromise claims by or against a child. However, the common law can be modified or abrogated by statute. Thus, a child can be bound by a parent’s act when a statute grants that authority to a parent. We believe that [MCL 600.5046(2)] changes the common law to permit a parent to bind a child to an arbitration agreement.[29]
Accordingly, we reaffirmed that, under the consistent and well-established Michigan common law, a parent is without authority to bind his child by contract.
In support of its claim that parental preinjury waivers are valid, defendant first contends that general freedom of contract principles render these agreements enforceable.[30] This contention is entirely unpersuasive. The issue at hand is not whether a competent adult is free to contract. Rather, the relevant issue is the subject matter of the contract. This Court does not, under *243 freedom of contract principles, enforce contracts that the parties otherwise have no authority to enter.[31] Mr. Woodman possesses no greater authority to waive the property rights of his son Trent than he possesses to waive the property rights of any other nonconsenting third party, such as his neighbor or a coworker. Thus, the answer to defendant’s freedom of contract argument is simple: the freedom to contract does not permit contracting parties to impose obligations upon and waive the rights of third parties in the absence of legally cognizable authority to do so.
Relying on O’Brien v Loeb,[32] defendant’s second contention is that a parent is only prohibited from waiving a tort claim after the injury and may freely waive a tort claim before the injury. In O’Brien, this Court rejected a parent’s authority to waive her minor son’s tort claim after the injury occurred because “[t]he transaction was carried on entirely with the mother, who was without authority to bind him in the release of his cause of action against the defendants.”[33] Rather than supporting defendant’s claim, O’Brien is in accord wdth the general common law rule that a parent is *244 without authority to bind his child by contract. O’Brien in no way creates an exception to the general common law rule, and no limiting principle or rationale may be extracted from its holding. I conclude that there is no basis to support defendant’s contention that a parent is only prohibited from waiving the child’s tort claims after the injury.[34]
The application of the common law in this case is simple and straightforward. The waiver at issue is a contractual release. Mr. Woodman signed the waiver on behalf of his son, thereby intending to bind Trent to that contract. Under the common law, Mr. Woodman was without authority to do so. Accordingly, the waiver is not enforceable against Trent and does not bar his cause of action. Defendant’s effort to enforce the waiver must therefore be viewed as a request that this Court modify the common law.
B. SHOULD THE COMMON LAW BE CHANGED?
The Michigan Constitution provides that “[t]he common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.”[35] Both this Court and the Legislature have authority to change the common law.[36]
*245 In this case, we are (impliedly) asked to alter a common law doctrine that has existed undisturbed for well over a century. There is no question that, if this Court were inclined to alter the common law, we would be creating public policy for this state. Just as “legislative amendment of the common law is not lightly presumed,”[37] this Court does not lightly exercise its authority to change the common law.[38] Indeed, this Court has acknowledged the prudential principle that we must “exercise caution and . .. defer to the Legislature when called upon to make a new and potentially societally dislocating change to the common law.”[39] Whether to alter the common law is a matter of prudence and, because we share this authority with the Legislature, I believe we must consider whether the prudent course is to take action where the Legislature has not.
1. THE SUPERIORITY OF THE LEGISLATURE TO MAKE POLICY DECISIONS
This Court has recognized that the Legislature is the superior institution for creating the public policy of this state:
“As a general rule, making social policy is a job for the Legislature, not the courts. See In re Kurzyniec Estate, 207 Mich App 531, 543; 526 NW2d 191 (1994). This is especially true when the determination or resolution requires placing a premium on one societal interest at the expense of another: ‘The responsibility for drawing lines in a society as complex as ours — of identifying priorities, weighing the relevant considerations and choosing between competing *246 alternatives — is the Legislature’s, not the judiciary’s.’ O’Donnell v State Farm Mut Automobile Ins Co, 404 Mich 524, 542; 273 NW2d 829 (1979).”[40]
The superiority of the Legislature to address matters of public policy is positively correlated with the complexity of the government’s role in our society. During the nineteenth century, courts exercising their authority to alter the common law did so within the context of a simpler, agrarian economy. The legislatures of that era exercised a more limited regulatory role. In contrast, today’s modern legislatures exercise robust regulation of all facets of our modern, internationalized economy and the rights and responsibilities of citizens. The need for a judiciary responsive to perceived public policy needs of the state has been correspondingly reduced by the development of the Legislature as a full-time institution and its pervasive statutory regulation of our increasingly complex society.
This case illustrates why this Court should frequently defer policy-based changes in the common law to the Legislature. When formulating public policy for this state, the Legislature possesses superior tools and means for gathering facts, data, and opinion and assessing the will of the public.[41] The Legislature can hold hearings, gather the opinions of experts, procure studies, and generally provide a forum for all societal factions to present their competing views on a particular question of public policy.
The judiciary, by contrast, is designed to accomplish the discrete task of resolving disputes, typically be *247 tween two parties, each in pursuit of the party’s own narrow interests. We are “ ‘limited to one set of facts in each lawsuit, which is shaped and limited by arguments from opposing counsel who seek to advance purely private interests.’ ”[42] We do not generally consider the views of nonparties on questions of policy,[43] and we are limited to the record developed by the parties. The reality of our judicial institutional limitations is a significant liability in regard to our ability to make informed decisions when we are asked to create public policy by changing the common law.
This case demonstrates these institutional limitations. Defendant openly concedes that the principal impetus for seeking enforcement of parental preinjury waivers is the protection that waivers afford its business in the face of the increasingly litigious nature of society. But for the perceived increased likelihood of a lawsuit and accompanying litigation costs, businesses such as defendant would not need parental preinjury waivers.[44] Accordingly, in seeking to have its waiver *248 enforced, defendant requires a modification of the common law rule and thus necessarily (but only impliedly) asserts that the societal benefits of enforcing the waiver —saving defendant litigation costs — outweigh the societal costs of abrogating the common law. Defendant, however, has not provided this Court with anything beyond mere conjecture that this is true.[45]
This is a purely policy-driven matter with numerous costs, benefits, and trade-offs — none of which defendant has bothered to raise, much less explicate. Certainly, enforcing the common law would protect minors’ contractual and property rights and presumably encourage greater care in preventing negligent injuries to children. These are, without question, admirable societal goals with significant societal benefits that have a long provenance in this state’s jurisprudence. Changing the common law would arguably save litigation costs for businesses offering recreational activities for children and concomitantly promote the availability of a wide range of activities for children. These too are admirable societal goals.[46] Of concern, however, are the potential *249 hidden costs that might occur if the common law were changed. For example, if parental preinjury waivers were to be enforced, there would be a possibility that business owners will have diminished incentives to maintain their property appropriately, resulting in an increased number of injuries to children. Moreover, the enforcement of preinjury waivers might result in an increased burden on taxpayers for children whose parents waived their children’s right to pursue a tort remedy but cannot afford their necessary medical care.[47]
These are but two illustrations of possible unintended consequences that a change in the common law here might occasion. Undoubtedly, there are many others. How are we as jurists to determine whether enforcing or changing the common law rule will result in a net benefit to society? Here we would only be able to make an uneducated guess without even a substantial analysis from the party that requires (but has not asked for) changes in the common law.[48] When engaging in such rank guesswork, the weight of common law authority that has existed for more than a century must be preferred. In accord with Hippocrates’ admonition, maintaining the status quo has the significant benefit of doing no greater harm.
As stated previously, the Legislature is not similarly constrained to make policy on the basis of blind specu *250 lation. Thus, if changing the common law to permit a parent to bind his child to a preinjury waiver is deemed to result in a net societal benefit, the Legislature can determine that fact with reasonable assurance before subjecting the public to such a change.
Illustratively, defendant’s proffered rationale for a revision of what a majority of justices have concluded is the existing rule is the argument that a parent is presumed to act in his child’s best interests and has a “fundamental right... to make decisions pertaining to the care, custody, and control of [that] minor child[].”[49] That rationale, however, is not discretely limited to preinjury waivers. Under defendant’s proffered analysis, a parent would be able to bind the child in any contract, no matter how detrimental to the child. Thus, defendant’s rationale would arguably completely abrogate the common law prohibition of guardians contractually binding their minor wards.
As explained, the common law rules regarding minors and limitations on those who would contract on their behalf exist solely for the protection of the minors.[50] As unfortunate as it may be, a parent does not always act in his child’s best interests. For example, in Wood v Truax,[51] the defendant’s guardian entered into a mortgage and bond when the defendant was a minor. After the mortgage went into foreclosure, the plaintiff “procured a decree for the deficiency” against the defendant. However, Wood applied the common law rules to invalidate a judgment against the defendant *251 because the mortgage was entered into when she was a minor and she had done nothing to affirm the contract after reaching adulthood.[52] Similarly, in Tuer v Niedoliwka,[53] the mother agreed on her infant child’s behalf to release the father from all child support obligations in return for $2,000. However, the Court held that a “child’s right to support from a putative father cannot be contracted away by its mother, and that any release or compromise executed by the mother is invalid to the extent that it purports to affect the rights of the child.”[54] Thus, as noted in our caselaw, there have been instances in which a parent did not act in his child’s best interests, and it is certainly not unimaginable that such agreements could recur and be enforced in the absence of the common law rule that serves to protect the minor child.
As occurred in oral argument on this case, those favoring the modification of the common law rule might reflexively respond to the fact that parents do not always act in the best interests of their children by adding a qualifier to the modification of the common law rule: a parental waiver is binding on the child only if the waiver is in the “child’s best interests.” However, this effort to avoid eviscerating the protection of children now recognized in the common law rule would undoubtedly create as many problems as it would resolve. Certainly, such an approach would create ancillary litigation over whether the parental waiver was in the child’s best interests. While society might generally benefit from allowance of parental waivers for minor children, it could reasonably be asked: Is any preinjury waiver that is later asserted against a particular minor *252 ever in the best interests of the injured child? The existing common law is well established, clear, and easy to apply and consistently protects children; it must be preferred over a chaotic, ad hoc alternative.
2. PUBLIC POLICY ENACTED BY THIS COURT MUST BE CONSISTENT WITH THE EXISTING PUBLIC POLICY OF THIS STATE
For the reasons discussed in the preceding section, this Court must practice restraint when considering a change in the common law. I believe we must limit the exercise of our authority by creating public policy that is consistent with the existing public policy of this state. Doing so protects against unwarranted and unwanted “societally dislocating change[s]” to the public policy of this state.[55] We have previously defined the proper sources of public policy to guide our analysis:
In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law.[56]
a. POSITIVE LAW
The preferred practice is to follow the lead of the institution best suited to make public policy for the state. Accordingly, I begin with the positive law enacted by the Legislature to determine whether public policy supports the change in the common law sought by defendant.
The Legislature has affirmatively acted to protect and preserve minors’ property interests.[57] With respect *253 to a minor’s cause of action, the Legislature has taken two significant steps. Pursuant to MCL 600.5851, the minority tolling provision, the period of limitations for a cause of action that accrued during minority is tolled. The minor is permitted to bring his cause of action within one year of reaching majority.[58] Thus, the Legislature has acted to preserve a minor’s ability to pursue and control the minor’s own claim.
Furthermore, although a parent as next friend of his child may settle a claim with the approval of the court,[59] the parent’s authority to receive settlement proceeds on the child’s behalf is strictly limited. Under MCL 700.5102, a guardian or person with the care and custody of a minor may receive no more than $5,000 each year on that minor’s behalf,[60] and
an individual receiving money or property for a minor is obligated to apply the money to the minor’s support and education, but shall not pay himself or herself except by way of reimbursement for out-of-pocket expenses for goods and services necessary for the minor’s support. An excess amount shall be preserved for the minor’s future support
[I]f the person first entitled to make an entry or bring an action under this act is under 18 years of age ... at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. [MCL 600.5851(1).] *254 and education. A balance not used for those purposes and property received for the minor shall be turned over to the minor when majority is attained.[61]
Notably, the Court of Appeals has held that MCL 700.5102 does not authorize a parent to settle his child’s tort claims.[62] Furthermore, in recognizing these legislative policy choices, this Court has provided by court rule that all settlements in favor of minors for payments of less than $5,000 in a single year are controlled by MCL 700.5102 and all greater settlements require the appointment of a conservator.[63]
These statutes evince a public policy firmly at odds with the autonomous parental control over a minor’s property rights that defendant asserts. The Legislature has consistently acted to preserve a minor’s property interest in his tort claims, and nothing in Michigan’s positive law indicates a legislative intent to abrogate the common law or extend a parent’s authority. Accordingly, positive law does not provide an anchor for altering the common law rules.
b. COMMON LAW
The common law is also a valid source for identifying the public policy of this state.[64] If the change required *255 by defendant in order to have the parental waiver upheld were consistent with other common law doctrines, this Court could consider creating consistent public policy. Here, however, the change necessitated to validate the parental waiver is at odds with other pertinent common law doctrines.
Defendant, in seeking to enforce a parental right to bind his child by contract, requires the abrogation of not one, but two common law tenets. First, as stated, a minor lacks the capacity to contract: “Their contracts are not void but voidable, and it is for the [minor] to avoid the contract or ratify it. .. .”[65] Second, a guardian cannot contractually bind his minor ward.
It should be noted that the modification defendant requires would not merely give a parent the same authority as the minor, given that a minor has no contractual authority and the minor’s waiver would not bar this action. Rather, defendant requires a modification of the common law rule that would give the parent authority to contractually bind the minor superior to that the minor himself enjoys. In short, defendant requires that the common law be changed to permit a parent to do what a minor could not do on his own behalf — enter into a contract that binds the minor. As we have previously stated, the rule that a minor lacks capacity to contract exists solely for the minor’s protection.[66] “The protection of infancy is a substantial one, and is not to be put aside and overcome by indirect methods.”[67] The exception required by defendant does precisely that: it removes the protections of a minor’s incapacity to contract by the indirect means of permit *256 ting the guardian to enter into a binding and enforceable contract for the minor.
Moreover, under the common law, minors are generally protected by the placement of greater burdens and increased potential liability on those coming into contact with minors. Thus, permitting the waiver of liability for negligent harm done to a child is inconsistent with public policy broadly recognized in the common law.
For example, a landowner is generally not liable for injuries suffered by a trespasser,[68] but the attractive nuisance doctrine imposes liability for injuries suffered by trespassing children.[69] Thus, the common law doctrine protects children by imposing greater liability on landowners when minors are involved.[70] Also, under the common law, a minor under seven years old was incapable of contributory negligence.[71] For minors older than seven, contributory negligence was based on “whether the child had conducted himself as a child of his age, ability, intelligence and experience would reasonably have been expected to do under like circum *257 stances.”[72] Accordingly, the common law protects children hy creating an incentive to exercise greater care for minors because it limits a defendant’s ability to escape liability on the basis of the child’s contributory negligence.[73]
The public policy of this state reflected in these common law liability doctrines is to protect children by imposing greater liability on adults for conduct involving potential harm to children. It would therefore require an extremely compelling argument to change the common law and permit defendant to limit its liability involving children.[74] Defendant has offered none.
IV CONCLUSION
The relief impliedly sought by defendant requires the creation of a new public policy for this state by modification of the common law. Although this Court has the authority to create public policy through its management of the common law, we share that authority with the Legislature. This Court has fewer tools for assessing the societal costs and benefits of changing the common *258 law than the Legislature, which is designed to make changes in public policy and the common law. Moreover, defendant has failed to identify any existing public policy supporting the change in the common law that it seeks; the existing positive law and common law indicate that enforcing parental waivers is contrary to the established public policy of this state. Accordingly, in matters such as these, I am persuaded that the prudent practice for this Court is conservancy of the common law.
Accordingly, I would decline to change the common law. I would affirm the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

 Const 1963, art 3, § 7 (“The common law and the statute laws now in force . .. shall remain in force until they expire by their own limitations, or are changed, amended or repealed.”); Longstreth v Gensel; 423 Mich 675, 686; 377 NW2d 804 (1985) (“[T]he common-law rule remains the law until modified by this Court or the Legislature.”).

 I note that a bill to modify the common law rule at issue here has been introduced in the Legislature. HB 4970, introduced May 19, 2009, would add § 5109 to the Estates and Protected Individuals Code. The added section would provide:
(1) A parent or guardian of a minor who participates in recreational activity may release a person in advance from liability for economic or noneconomic damages for personal injury sustained by the minor as a result of the activity.
(2) One or more of the following may be released from liability under this section:
(a) A sponsor or organizer of the recreational activity.
(b) An owner or lessee of the property on which the recreational activity occurs.
(3) A release under this section shall be in writing signed by the parent or guardian.
On March 10, 2010, the House Judiciary Committee reported the bill with a substitute and recommended that the House of Representatives adopt the substitute.

 This is a case in which the competing policy interests are closely balanced. The common law and positive law that inform my understand *233 ing uniformly promote the protection of children and require that parents not be permitted to waive any future claims of their children. I am sympathetic to the arguments that Justice Markman and the Court of Appeals concurrences offer that this view of the common law rule may promote litigiousness in our modern society. However, given the cases and positive law cited, I believe that this closely balanced social question is one best handled by the Legislature — particularly given that members of this Court, rather than the parties themselves, have offered stronger rationales for the common law rule that Justice Markman favors.

 As noted in footnote 6, given the language of the waiver, the fact that Mr. Woodman signed as “parent” rather than as the “participant” on the waiver raises questions about whether Trent’s rights were waived at all.

 MCL 445.901 ei seq.

 Ironically, the question whether the waiver at issue here actually bound the child was raised by members of this Court at oral argument, as the challenged waiver appears to bind only the “undersigned,” who is Mr. Woodman, not the “participant,” Trent. Indeed, it appears that the “undersigned” is bound to indemnify defendant for any liability that might occur. Notwithstanding this, plaintiff has argued throughout this litigation that the release bound Trent.
*235 Following the trial court’s determination that the waiver precluded plaintiff’s suit, plaintiff subsequently moved for summary disposition and argued that the waiver language was ineffective to wave plaintiff’s claim. Plaintiff conceded that the waiver “operate[d] between” defendant and Trent, but argued that the agreement was insufficiently clear to effectuate a valid waiver of Trent’s rights. The trial court denied that motion, and plaintiff has not appealed on the basis that the waiver language was ineffective. An issue not advanced or appealed is deemed waived. Lawrence v Will Darrah & Assoc Inc, 445 Mich 1, 4 n 2; 516 NW2d 43 (1994). Because plaintiff never argued that the waiver hound Mr. Woodman, I do not address the obvious problems with the waiver language, which, in contradiction to the argument specifically advanced by plaintiff before the trial court, appears to bind only Mr. Woodman, rather than Trent.

 Woodman v Kera, LLC, 280 Mich App 125; 760 NW2d 641(2008). The Court of Appeals also held that defendant was entitled to summary disposition on plaintiffs gross negligence and MCPA claims.

 Id. at 144 (opinion by Talbot, J.), quoting Tuer v Niedoliwka, 92 Mich App 694, 698-699; 285 NW2d 424 (1979).

 Woodman, 280 Mich App at 151 (opinion by Talbot, J.).

 Id. at 149.

 Id. at 157 (opinion by Bandstra, EJ.); id. at 161 (opinion by Schoette, J.).

 Woodman v Kera, LLC, 483 Mich 999 (2009).

 Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999).

 See Holmes v Rice, 45 Mich 142; 7 NW 772 (1881) (“The law in recognizing the incapacity of infants to enter into certain contracts and *237 declaring such contracts voidable does so for the infant’s protection. Their contracts are not void but voidable, and it is for the infant to avoid the contract or ratify it. . . .”); Minock v Shortridge, 21 Mich 304, 315 (1870) (“The executory contract of an infant, such as a promissory note, is not void in the sense of being a nullity, because it may be confirmed, but it has no binding force until it is confirmed.”); Carrell v Potter, 23 Mich 377, 378-379 (1871); Dunton v Brown, 31 Mich 182, 183 (1875); Reynolds v Garber-Buick Co, 183 Mich 157, 162; 149 NW 985 (1914) (“After reaching his majority one may disaffirm a contract made by him during infancy and recover what he paid or parted with pursuant to such contract, if he return what he received.”); Lawrence v Baxter, 275 Mich 587, 589; 267 NW 742 (1936) (“Authority need not be cited in support of the uniform holdings that a minor may rescind a contract of this character. The contract for the house and lot was not for a necessity.”).
The common law exception to this rule is that a minor can bind himself by contract for “necessaries.” See In re Dzwonkiewicz’s Estate, 231 Mich 165, 167; 203 NW 671 (1925) (defining “necessaries” as items that “ ‘answerü the bodily needs of the infant, without which the individual cannot reasonably exist’ ” and holding that medical services are “necessaries”) (citation omitted); Squier v Hydliff, 9 Mich 274, 277 (1861) (“It has, we believe, always been held that a minor might bind himself by contract for necessaries, and that such contract when executed, if reasonable under all the circumstances, or not so unreasonable as to be evidence of fraud or undue advantage, can not be repudiated by him.”); Lynch v Johnson, 109 Mich 640, 643; 67 NW 908 (1896) (“These clothes were within the class known as ‘necessaries.’ ”); Wood v Losey, 50 Mich 475, 477-478; 15 NW 557 (1883).
There are, of course, also express statutory exceptions to the common law. See, e.g., MCL 600.1404(2) (educational loans); MCL 600.1403 (willful misrepresentation of age); MCL 500.2205 (life or disability insurance); MCL 333.5127(1) (consent to medical care for a minor infected with venereal disease or HIV); MCL 333.6121(1) (consent to substance abuse related medical care); MCL 333.9132(1) (consent to prenatal and pregnancy related health care).

 See Minock, 21 Mich at 315. The age of majority in Michigan is 18. MCL 722.52.

 Justice Markman cites numerous instances in which the Legislature has permitted “parents to provide consent to their children’s participation in numerous significant activities” as a basis for concluding that parental preinjury waivers are enforceable. Post at 285, 288-290.
However, the issue presented in this case is not whether parents have the authority to consent to their child’s participation in various activities. Certainly, parents generally have such authority, and nothing in this opinion should be read as attempting to limit a parent’s authority to provide consent to the activity. The issue in this case is whether a parent may bind his child by contract when the child is injured as a result of participating in the consented-to activity,

 See Reynolds, 183 Mich at 166, in which this Court stated:
Of the power of guardians ,to contract for their wards, it is stated as a general proposition that:
“Guardians cannot by their contracts bind either the person or estate of their wards. Such contracts bind the guardians personally, and recovery must be had in an action against them, not against the ward.” [Citation omitted.]
See also Burt v McBain, 29 Mich 260, 265 (1874) (“In this case the plaintiff was an infant, and she could not be bound by any relinquishment or attempted relinquishment by another of her rights.”); Bearinger v Pelton, 78 Mich 109, 114; 43 NW 1042 (1889) (“The general guardian had no right to bind the infants by a consent decree.”).

 Armitage v Widoe, 36 Mich 124 (1877).

 Id. at 129 (citations omitted).

 Lothrop v Duffield, 134 Mich 485; 96 NW 577 (1903).

 Id. at 487 (emphasis added).

 See id. at 487-489 and the numerous authorities cited therein.

 See In re Knott, 162 Mich 10, 16; 126 NW 1040 (1910); In re Rosebush, 195 Mich App 675, 686; 491 NW2d 633 (1992), quoting In re LHR, 253 Ga 439, 446; 321 SE2d 716 (1984).

 See Gott v Culp, 45 Mich 265, 271-272; 7 NW 767 (1881) (“The law is entirely well settled that the guardian’s discretion in such matters stands on a very similar footing with a parent’s, and that he is not compellable to prefer mere economy of cost to the welfare and comfort of his ward.”); MCL 700.5215 (“A minor’s guardian has the powers and responsibilities of a parent who is not deprived of custody of the parent’s minor and unemancipated child ....”).

 Power v Harlow, 57 Mich 107; 23 NW 606 (1885).

 Id. at 111 (emphasis added).

 See footnote 17 of this opinion; Lothrup, 134 Mich at 487; Reliance Ins Co v Haney, 54 Mich App 237, 242; 220 NW2d 728 (1974) (“A parent has no authority merely by virtue of the parental relation to waive, release, or compromise claims by or against his child.”), citing 67 CJS, Parent & Child, § 58, p 764, and Schofield v Spilker, 37 Mich App 33; 194 NW2d 549 (1971); Tuer, 92 Mich App at 698-699 (holding that an agreement between parents purporting to release the father of child support obligation was not binding on the child); In re Kinsella Estate, 120 Mich App 199, 203; 327 NW2d 437 (1982) (mother’s consent to annulment with putative father was not was not binding on children seeking to establish paternity); Smith v YMCA of Benton Harbor/St Joseph, 216 Mich App 552, 554; 550 NW2d 262 (1996) (parental release in exchange for $3,275 after child fell at swimming pool was not binding on child).

 McKinstry v Valley Obstetrics-Gynecology Clinic, PC, 428 Mich 167; 405 NW2d 88 (1987).

 Id. at 192-193 (citations omitted).

 See Terrien v Zwit, 467 Mich 56, 71; 648 NW2d 602 (2002) (“ ‘The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.’ ”), quoting Twin City Pipe Line Co v Harding Glass Co, 283 US 353, 356; 51 S Ct 476; 75 L Ed 1112 (1931).

 See, e.g., Atlas Mining Co v Johnston, 23 Mich 36, 47 (1871) (holding that the defendant was not bound by its agent’s agreement to purchase property sold at a public auction for $400 more than he was authorized to bid because ‘‘[i]t would be simply preposterous to hold that [the agreement] ... assented to by [the agent], could in any way bind or affect the defendant, if [the agent] had no authority thus to bind them and the defendant did not ratify his action.”); Miller v Frost’s Detroit Lumber & Wooden Ware Works, 66 Mich 455, 458-459; 33 NW 406 (1887) (holding that the defendant was not bound by the agreement of an unauthorized agent to purchase lumber); Deffenbaugh v Jackson Paper Mfg Co, 120 Mich 242; 79 NW 197 (1899) (holding that the defendant company was not bound by an employment contract with the plaintiff that its agents were not authorized to enter into on the defendant’s behalf).

 O’Brien v Loeb, 229 Mich 405; 201 NW 488 (1924).

 Id. at 408. The Court further quoted the rule from 22 Cyc L & Proc at 584:
*244 “An infant is not bound by a contract made for him or in his name by another person purporting to act for him, unless such person has been duly appointed his guardian or next friend and authorized by the court to act and bind him.” [O’Brien, 229 Mich at 408.]

 See McKinstry, 428 Mich at 192-193, in which this Court acknowledged that a preinjury arbitration agreement was not enforceable under the common law.

 Const 1963, art 3, § 7.

 Myers v Genesee Co Auditor, 375 Mich 1, 7; 133 NW2d 190 (1965).

 Wold Architects & Engineers v Strat, 474 Mich 223, 233; 713 NW2d 750 (2006).

 See Bolt v Natural Resources Comm, 415 Mich 45; 327 NW2d 838 (1982).

 Henry v Dow Chem Co, 473 Mich 63, 89; 701 NW2d 684 (2005).

 Van v Zahorik, 460 Mich 320, 327; 597 NW2d 15 (1999), quoting Van v Zahorik, 227 Mich App 90, 95; 575 NW2d 566 (1997).

 See Henry, 473 Mich at 92 n 24, quoting Schwartz & Lorber, State Farm v Avery: State court regulation through litigation has gone too far, 33 Conn L R 1215, 1219-1220 (2001).

 Henry, 473 Mich at 93 n 24, quoting Schwartz & Lorber, 33 Conn L R at 1220.

 Our authority to entertain the positions of nonparties through briefs of amici curiae, MCR 7.306(D), is a far inferior alternative to the legislative process, in which hearings on policy questions broadly permit all citizens to give testimony and otherwise participate by petitioning their government and lobbying their representatives. See Const 1963, art 1, § 3. While appropriate in the legislative branch, such conduct is unethical in the judicial branch.
This very case shows the limit of this Court’s ability to consider positions other than the ones advanced by the parties. Although the question whether parents may waive their children’s rights is one of obvious public policy significance, only two amicus curiae briefs were submitted, and one urged this Court to defer to the Legislature. See amicus curiae brief of the Michigan Association for Justice at 7.

 Judge BANDSTRA, concurring with the lead opinion in the Court of Appeals, observed that “this case amply demonstrates [that] ours is an *248 extremely and increasingly litigious society” and that “[cjhildren have routinely jumped off playground slides for generations; lawsuits seeking to impose damages on someone else for resulting injuries are only a recent phenomenon.” Woodman, 280 Mich App at 160 & n 2.

 Again, defendant does not even acknowledge that it seeks to change the common law rule. Consequently, defendant offers no analysis of what change this Court should make to the existing rule or the consequences of such a change.

 Fostering the stability of Michigan’s businesses is also an important policy objective. In fact, given Michigan’s persistently poorly performing economy, an argument could be made that fostering businesses that create more job opportunities is of primary social and economic importance to this state. See Gallagher, CEOs expect slow state recovery, Detroit Free Press, October 28, 2009, at 13A; The State of Joblessness, Wall St J, October 20, 2009, at A20; United States Department of Commerce, Bureau of Economic Analysis, News Release: Economic Slowdown Widespread Among States in 2008, June 2, 2009 (showing that Michigan’s *249 gross domestic product has declined each year since 2005), available at <http://www.bea.gov/newsreleases/regional/gdp_state/2009/pdf/gsp0609.pdf> (accessed June 3, 2010).

 See Kirton v Fields, 997 So 2d 349, 357 (Fla, 2008). (“If the parent cannot afford to bear that burden, the parties who suffer are the child, other family members, and the people of the State who will be called on to bear that financial burden.”).

 Cf. Henry, 473 Mich at 90 (“In effect, we have been asked to craft public policy in the dark.”).

 Troxel v Granville, 530 US 57, 66; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O’Connor, J.); see also Parham v J R, 442 US 584, 602; 99 S Ct 2493; 61 L Ed 2d 101 (1979).

 See Holmes, 45 Mich at 142 (“The law in recognizing the incapacity of infants to enter into certain contracts and declaring such contracts voidable does so for the infant’s protection.”).

 Wood v Truax, 39 Mich 628 (1878).

 Id. at 633.

 Tuer, 92 Mich App at 696.

 Id. at 699.

 Henry, 473 Mich at 89.

 Terrien, 467 Mich at 66-67.

 See, e.g., MCL 700.5401(2) (permitting a court to appoint a conservator or enter a protective order “if the court determines that the minor *253 owns money or property that requires management or protection that cannot otherwise be provided, has or may have business affairs that may be jeopardized or prevented by minority, or needs money for support and education and that protection is necessary or desirable to obtain or provide money”); Michigan Uniform Transfers to Minors Act, MCL 554.521 et seq.

 MCL 600.5851 contains exceptions for medical malpractice claims, but provides in pertinent part:

 MCR 2.420; O’Brien, 229 Mich at 408.

 MCL 700.5102(l)(b) and (c).

 MCL 700.5102(3).

 Smith, 216 Mich App at 555 (“The statute does not provide parents the authority to compromise their children’s claims; it merely permits a debtor of a minor to make payments directly to the minor’s parents without seeking judicial approval for each payment as long as the aggregate amount of the payments is less than $5,000 a year.”). Smith interpreted MCL 700.403, a predecessor of MCL 700.5102 with essentially the same provisions.

 MCR 2.420(B)(4); see MCL 700.5401 through MCL 700.5433 (providing for the appointment of a conservator to protect the property of a minor).

 See Terrien, 467 Mich at 66-67.

 Holmes, 45 Mich at 142.

 Id.

 Armitage, 36 Mich at 129.

 The exception is for injuries caused by the landowner’s willful and wanton misconduct. Stitt v Holland Abundant Life Fellowship, 462 Mich 591, 596; 614 NW2d 88 (2000).

 Murday v Bales Trucking, Inc, 165 Mich App 747, 751-752; 419 NW2d 451 (1988); 2 Restatement Torts, 2d, § 339, p 197.

 See Justice Cooley writing for the Court in Powers v Harlow, 53 Mich 507, 515; 19 NW 257 (1884):
Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would he tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken.

 Baker v Alt, 374 Mich 492, 505; 132 NW2d 614 (1965).

 Burhans v Witbeck, 375 Mich 253, 255; 134 NW2d 225 (1965); see also 2 Restatement Torts, 2d, § 283A, p 14.

 See Tyler v Weed, 285 Mich 460, 488-489; 280 NW 827 (1938) (McAllister, J., dissenting in part) (“This ancient bulwark and protection of little children is a vital safeguard of their rights and persons. It warns that no one can negligently cause injury to a child of such tender years with impunity, by casting on his small shoulders the onerous burden of proving his own freedom from negligence.”).

 I note that, even without a change in the common law rule, defendant has alternatives for reducing its liability. For example, defendant’s waiver in this case suggests a suitable, although perhaps less than optimal, alternative: parental indemnity. A parent can contract on the parent’s own behalf to indemnify the defendant for any losses arising from injuries his child suffers while participating in the activity offered by the defendant.