*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JERMAINE JAQUAN BOLTON,

      Defendant-Appellant.

UNPUBLISHED
August 15, 2025
10:32 AM

No. 367214
Muskegon Circuit Court
LC No. 2021-004527-FC

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

BOONSTRA, J. (*concurring*).

I concur in affirming defendant's jury-trial convictions of felony murder, MCL 750.316(1)(b), second-degree murder, MCL 750.317, and felony-firearm, MCL 750.227b(1). I concur only in the result with respect to the reversal of defendant's life imprisonment without the possibility of parole (LWOP) sentence, and I do even that only because I am obliged to follow our Supreme Court's recent decision in *People v Taylor*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654), no matter how misguided it (and *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), upon which *Taylor* was erected) may be.[1]

In my concurring opinion in *People v Czarnecki (On Remand, On Reconsideration)*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 348372) (BOONSTRA, J., concurring), rev'd by *Taylor*, ___ Mich at ___; slip op at 16, I pointed out that Michigan has long drawn the line between juveniles and adults at the age of 18. So has the United States Supreme Court, both with regard to eligibility for the federal death penalty, see *Roper v Simmons*, 543 US 551, 574; 125 S Ct 1183;

---

[1] See *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009), quoting *Paige v Sterling Hts.*, 476 Mich 495, 524; 720 NW2d 219 (2006) ("[O]nly [the Supreme] Court has the authority to overrule one of its prior decisions. Until [it] does so, all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided or has become obsolete.") (second and third alterations in *Sprague*).

161 L Ed 2d 1 (2005), and more recently with regard to LWOP sentences, see *Miller v Alabama*, 567 US 460, 465, 479; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

But our Michigan Supreme Court has now decreed that LWOP sentences, as applied to 18, 19, and 20-year old offenders (at least for now), are "unconstitutionally harsh and disproportionate punishment and thus 'cruel' punishment in violation of" the Michigan Constitution, Const 1963, art 1 §16. *Taylor*, __ Mich at __; slip op. at 16. My prediction in *Czarnecki* has therefore now come true. See *Czarnecki (On Remand, On Reconsideration)*, ___ Mich App at ___ (BOONSTRA, J., concurring); slip op at 5 ("It thus appears that the Court in *Parks* may have been laying the groundwork to possibly extend its own extension of *Miller* (from age 18 to age 19) even farther, perhaps to age 25 (as it suggested some current scientific literature may support).").

Our Supreme Court in *Parks* and *Taylor* relied heavily on scientific research that suggested that "the late-adolescent brain completes rewiring and maturation during one's mid-twenties." *Taylor*, ___ Mich at ___; slip op at 9. The Court further relied in part on the fact that certain rights and privileges in our society are not gained until the age of 21. As the Supreme Court pointed out, these include, for example, holding certain offices, purchasing or consuming certain substances, and obtaining a concealed pistol license. See *Taylor*, __ Mich at __; slip op at 8. However, the Supreme Court failed to acknowledge (other than implicitly by its own citation to the underlying authorities) that these public policies arose either by way of a constitutional provision (i.e., adoption at a constitutional convention or by a vote of the people) or by a legislative enactment. *Id*. at __; slip op at 8. They did not arise by judicial fiat.

As I pointed out in *Czarnecki*, "the law requires consistency," and the objective of enabling litigants and legal practitioners the ability to rely upon well-established legal principles "is not furthered by a system of justice that allows the law to ebb and flow at the whim of the judiciary. It is instead furthered, and its legitimacy in the eyes of our society is advanced, by demanding consistency in the law . . . ." *Czarnecki (On Remand, On Reconsideration)*, ___ Mich App at ___ (BOONSTRA, J., concurring); slip op at 5 (citations omitted). It is for that reason that such matters are properly left to the people's policy-making representatives in the Legislature, rather than dictated by a judicial edict. *Id*.; see also *Roper*, 543 US at 616-618 (SCALIA, J., dissenting) ("Today's opinion provides a perfect example of why judges are ill equipped to make the type of legislative judgments the Court insists on making here. To support its opinion that States should be prohibited from imposing the death penalty on anyone who committed murder before age 18, the Court looks to scientific and sociological studies, picking and choosing those that support its position. . . . [A]ll the Court has done today, to borrow from another context, is to look over the heads of the crowd and pick out its friends.").

I also pointed out in *Czarnecki* that our society authorizes 18-year-olds and even some juveniles to engage in conduct requiring some of the weightiest decision-making we will ever encounter in life:

> In 1971, the Michigan Legislature enacted the Age of Majority Act, MCL 722.52 *et seq*., which generally provided that "a person who is at least 18 years of age . . . is an adult of legal age for all purposes whatsoever, and shall have the same duties, liabilities, responsibilities, rights, and legal capacity as persons heretofore acquired at 21 years of age." MCL 722.52(1). The legal age to vote in Michigan is also 18.

See Const 1963, art 2, § 1. . . . Under the common law, the capacity generally to enter into contracts is gained at the age of 18. See *Woodman ex rel Woodman v Kera LLC*, 486 Mich 228, 236;785, NW2d 1 (2010). The legal age to make a will is 18. MCL 700.2519. The legal age to marry is also 18. MCL 551.103(1). . . . The age of consent (for sexual activity) is 16. See, e.g., MCL 750.520c. A minor (under the age of 18) may petition a court to waive the requirement of parental consent for an abortion. MCL 722.903. Before the enactment of 2023 PA 71, effective September 19, 2023, the legal age to marry—with parental consent—was 16.[2] MCL 551.51; MCL 551.103.[3]

---

[2] Now that 2023 PA 71 and its related legislation has become effective, a minor (who, as noted, may petition for an abortion without parental consent, MCL 722.903) may no longer petition for permission to marry (even with parental consent). See House Bill 4294, tie-barred to 2023 PA 71 (containing amendments to MCL 551.103 eliminating a minor's ability to petition for marriage).

[3] It isn't a stretch to ponder, notwithstanding the recently-enacted *increase* in the legal age to marry (with parental consent), whether proposals to *reduce* the age for gender-transition measures will soon find their way into the law. The World Professional Association for Transgender Health recommends that the age for allowing gender-transition hormones be lowered to 14, and that for gender-transition surgeries be reduced to as low as 15. See International Journal of Transgender Health, "Standards of Care for the Health of Transgender and Gender Diverse People, Version 8" (2022), available at https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644 (last accessed October 2, 2023); see also AP News, "Trans kids' treatment can start younger, new guidelines say," available at https://apnews.com/article/gender-transition-treatment-guidelines-9dbe54f670a3a0f5f2831c2bf14f9bbb (last accessed October 2, 2023).

---

These are matters that should be left to the Legislature. They should not be subject to the whims of judges based upon their subjective interpretation of neuroscience or their personal policy preferences.

In *Czarnecki*, I unveiled the hypocrisy of deeming young adults exempt from personal accountability for heinous criminal conduct because their brains are supposedly still developing, while simultaneously deeming them (and even certain juveniles) capable of adult-like decision-making in a plethora of other arenas of life. I invited our Supreme Court, if it were to do what it now has done in *Taylor*, as follows:

> I would respectfully suggest that the people of Michigan deserve a clear and cogent articulation of why legal adults (or even minors) are categorically deemed under the law to be of sufficient maturity to exercise decision-making in the most weighty and consequential matters they will confront in our society during their lifetimes—

with respect to such matters as voting, entering into marriage, entering into binding contracts, making a will, aborting the unborn, engaging in procreative activity, or taking measures to alter one's gender—but are not similarly deemed to be of sufficient maturity to be held accountable for the most grievously-imaginable criminal wrongdoing. [*Czarnecki (On Remand, On Reconsideration)*, ___ Mich App at ___ (BOONSTRA, J., concurring); slip op at 6.]

That invitation went ignored by our Supreme Court. So did my caution that our Supreme Court was embarking on a slippery slope of personal unaccountability. As I said:

It takes little imagination to foresee that the next scientific studies that will make their way into appellate briefing may posit that the human brain continues to develop until the age of 30, or perhaps 35, or possibly 60, or that in fact we all continue to develop and mature in our decision-making capabilities until we take our last breath.[13] All the more reason for the judiciary to leave the evaluation of such matters to the people's policy-making representatives (who also should consider the need for consistency in the law), as Justice Scalia suggested in *Roper*, rather than for those of us in black robes to issue pronouncements that override them. [*Id.* at ___; slip op at 7).

---

[13] Other studies may posit that the human brain *declines* after the age of 80, or 70, or 60, or some other age, which may then suggest that we should also institute a corresponding mitigation-of-responsibility effect on the opposite (high) end of the age continuum.

---

So, the people of Michigan should brace themselves for where our Supreme Court will take us next. Will it extend *Taylor* (which extended *Parks*, which extended *Miller*) to cover 21-year-olds? 22-year-olds? 25-year olds? Or beyond? Will it extend *Taylor* to cover sentences other than LWOP? Or crimes other than murder? Will it extend *Taylor* to recognize a corresponding mitigating effect for persons who may be experiencing diminished brain function due to aging or other factors? Which ones? And at what age? Under the Supreme Court's reasoning, there simply is no limit to the diminishment or elimination of personal accountability that it may one day read into our Constitution.

The people of Michigan deserve that "clear and cogent articulation" I called for in *Czarnecki*. And they deserve more than social policy masquerading as legal reasoning. The Court should leave these matters to the Legislature. But for *Taylor*, I would affirm defendant's LWOP sentence.

/s/ Mark T. Boonstra