### RUSSELL v. PHILLIPS.

1. ACCOUNTING—FIDUCIARY RELATIONS—BURDEN OF PROOF.
   On a bill for an accounting of the proceeds of real estate deeded by complainant to defendant, the fact that the parties are father and daughter does not establish such fiduciary relations as will shift the burden of proof and compel the daughter to justify what has been done.

2. SAME—FRAUD—UNDUE INFLUENCE—SUFFICIENCY OF EVIDENCE.
   On a bill by a father against his daughter to establish a lien on certain real estate on the ground that it was purchased with the proceeds of land the deed to which was obtained from complainant by fraud and undue influence, evidence examined, and held, insufficient to warrant relief.

Appeal from Kalamazoo; Adams, J. Submitted April 11, 1906. (Docket No. 47.) Decided July 23, 1906.

Bill by Richmond S. Russell against Anna Phillips and Sarah A. Hutchinson for an accounting. From a decree dismissing the bill, complainant appeals. Affirmed.

*Barnard & Lewis* (*Benton & Adams*, of counsel), for complainant.

*Knappen & Flansburg*, for defendants.

BLAIR, J.   Complainant, a colored man over 80 years of age, is the father of defendant Phillips, and some time in 1901 executed and delivered to defendant a warranty deed of his homestead of 20 acres of land in Allegan county.   It is claimed by complainant that the consideration for this deed was an agreement on the part of defendant to pay a mortgage on the premises amounting, with interest, to $160, and "to give your orator a life lease of said land and premises."   Defendant admits that she agreed to pay the mortgage, and this she did, but denies that she agreed to give a life lease of the premises and "charges the truth to be that she did agree to give the complainant and his wife the use of an acre of land as long as they desired to make that their home, upon which acre of land was a house where they made their home."   Soon after getting the deed, defendant rented the premises, aside from the one acre, but complainant made trouble with the tenant and he moved off.   About four years after the deed was made, the house burned down, and defendant, about a year afterwards, sold the premises for $325, and, with the money thus acquired, bought another place for $500, paying $300 down and giving a mortgage for $200 to the defendant Sarah A. Hutchinson.   Prior to selling the land, defendant had offered to give complainant a lease of the one acre, which he refused, and demanded a lease of the entire tract.   Defendant refusing to give a life lease of the property, complainant filed the bill of complaint herein, praying that the defendant Anna Phillips (1) be required to account to him for the moneys received from the sale of the 20-acre tract and that he be given a lien upon the premises purchased therewith, subject to Mrs. Hutchinson's mortgage; (2) be required to give him a life lease of the premises last above mentioned.   After hearing the proofs in open court, the circuit judge entered a decree dismissing the bill of complaint.   From this decree complainant appeals.

The bill, which is sworn to by complainant, alleges that complainant, "being of the age of 80 years and upwards,

and being feeble in body and mind, was induced by his said daughter to make and execute a warranty deed of the premises," etc.; and complainant's brief opens with the contention that "the complainant in this case is the father of defendant Anna Phillips; therefore, there is a fiduciary relation existing between the parties, and, where there is a fiduciary relation existing, the burden of proof shifts to the defendant to show that she can justify what has been done." There must be something besides mere blood relationship to create such fiduciary relations as will shift the burden of proof. In the case before us there are no facts disclosed by the record to justify the application of the doctrine invoked. On the contrary, the complainant's own testimony negatives every fact of the allegation above quoted, except that relating to his age. His testimony clearly shows that he was neither feeble in mind nor in body, for his years; but, on the contrary, though unable to read or write, was a shrewd, intelligent man for one in his station in life, and as competent as his daughter to take care of himself in dealings between them. There is no evidence whatever of any fraud, overreaching, or undue influence. His daughter did not induce him to make the contract, but he induced her to enter into it. She was not a member of his household, lived in another county; only saw him once a year, and had no charge of his affairs; nor, so far as this record discloses, did he ever consult her about his affairs. As he states the transaction, the mortgagee was "crowding" him for his money, he tried to get the money and failed, and then asked his daughter to help him out, and the only question in the case is whether she agreed, as he claims, to give him in consideration of the deed a life estate in the 20 acres or in the 1 acre. There is nothing in this case to take it out of the ordinary rule, and the burden of proof was upon the complainant to sustain the case made by his bill.

The testimony of the parties is in irreconcilable conflict. The defendant testifies that complainant talked with her

at Grand Rapids by telephone, and the arrangement was made in that way; that complainant made out the deed, and sent it to her by mail, and she did not see him till after she had received the deed. The complainant testifies that the bargain was made at his house when defendant was there on a visit, but though he, perhaps, implies, he does not testify distinctly, that the deed was executed while she was there nor does he deny her statement that he made out the deed and sent it to her by mail. A witness to the deed was called by complainant, who testified that he had a talk with defendant at her father's house in November, "six years ago," in which "she spoke of giving her old folks a life lease of the place." This witness does not state that defendant was present when the deed was made, nor when nor where it was made. The date assigned by him for the talk with defendant would be two years before the deed was made. If defendant was present when the deed was made, it is singular that some witness who was also present should not have said so, and it is equally singular that the deed should not have been then and there delivered. Furthermore, defendant's mother must have known about this transaction. The deed of the homestead had to be signed by her, and she had an equal interest with her husband in the life lease. In fact, although the bill alleges that defendant "was to give your orator a life lease of said land," which is followed in the prayer for a lien, complainant testifies that "she agreed to give *me and her mother* a life lease of these premises, and Butler, the witness to the deed, testifies: "Why she spoke of giving *her old folks* a life lease of the place."

No reason is assigned for not calling the mother, who would naturally have been called if she could have helped complainant's case. But regardless of the failure to call the mother, which may have been for some good reason not disclosed by the record, there is an entire absence of proof that this contract was made by complainant with defendant at his home in Allegan county at the time the

deed was made. She swears that she was not there when Butler witnessed the deed, and no witness swears that she was. I am satisfied that defendant's statement that this contract was made by telephone is correct, and it logically follows that her statement as to the subject-matter of the agreement ought to be accepted. At all events, it cannot be held that complainant has established his allegations as to the contract by a preponderance of the evidence.

The decree of the circuit court is affirmed, with costs of both courts to defendant.

CARPENTER, C. J., and MCALVAY, GRANT, and MOORE, JJ., concurred.