SCHMALZRIEDT *v*. TITSWORTH.

1. APPEAL AND ERROR—DE NOVO REVIEW.
   In the Supreme Court chancery cases are reviewed *de novo*.

2. DEEDS—MISTAKEN LEGAL EFFECT.
   Elderly grantors, parents of grantees, who had reserved a life estate in deeds of their homestead and another piece of property when conveying same to their daughters, were not entitled to decree setting deeds aside, in suit brought for such purpose, because of mistake as to legal effect and result after death of one daughter who left no issue and willed her property to her husband, where it appears that deeds were executed to avoid probating the property, no consideration was given therefor, sufficient delivery was had, no undue influence, coercion or unconscionable conduct appears to have been exercised by grantees nor a fiduciary relationship disclosed.

3. SAME—FIDUCIARIES—BURDEN OF PROOF.
   Daughters to whom parents had conveyed homestead and other realty to avoid probating it did not have burden of proving good faith and validity of deeds where it does not appear that daughters or surviving husband to whom one had left her property had occupied a fiduciary relationship to the parents.

4. EQUITY—MISTAKE OF LAW.
   Mistake of law is not usually a ground for equitable relief in Michigan.

5. SAME—MISTAKE OF LAW—REFORMATION OF INSTRUMENTS—RESCISSION.
   Parties with knowledge of the facts, and without any inequitable incidents, who have made an agreement or an instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, will not, in a court of equity, be allowed a defense or granted

---

As to gifts made in reliance on relation, see Restatement, Restitution, § 58; mistake of law affecting gratuitous transactions, see § 49.

reformation or rescission although one of the parties may have mistaken or misconceived its legal meaning, scope, or effect.

6. MISTAKE—LEGAL EFFECT—EQUITABLE RELIEF.
   Mistake as to the legal effect of a written instrument, deliberately executed and adopted, constitutes no ground for relief in equity.

7. EQUITY—CONTRACTS—MISTAKE OF LAW.
   Where the mistake is not in the contract itself but the terms used in or omitted from the instrument which give it a legal effect not intended by the parties and different from the contract actually made, equity will always grant relief unless barred on some other ground, by correcting the mistake so as to produce a conformity of the instrument to the agreement, but, where the mistake of law is as to the legal effect of the contract actually made, the contract will not be relieved against unless there are other equitable legal features calling for the interposition of the court.

8. DEEDS—MISTAKE AS TO LEGAL RESULT.
   In suit by grantors, the elderly parents of grantees in quitclaim deeds to homestead and other realty in which grantors had reserved a life estate, to set aside such deeds, fact that grantors may have been mistaken as to the legal result of such deeds does not alone warrant the interposition of a court of equity, and where no other mistake of law or fact is shown, plaintiff, administrator of the surviving parent, was not entitled to decree.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 13, 1943. (Docket No. 45, Calendar No. 42,030.) Decided April 6, 1943.

Bill by Charles Wrase and Augusta Wrase against Hilda Wrase Titsworth and Ezra A. Wood, individually and as executor under the will of Elsie A. Wood, deceased, to set aside deeds to real estate. Augusta Wrase and Charles Wrase having died, Edward W. Schmalzriedt, administrator of the estate of Charles Wrase, continued as party plaintiff. Decree for defendant Wood. Plaintiff appeals. Affirmed.

*Hinks & Hinks,* for plaintiff.

*M. L. Leacock (Francis C. Glabach,* of counsel), for defendant Wood.

STARR, J. Plaintiff appeals from an order dismissing his bill of complaint which was filed to set aside certain deeds executed by plaintiff's decedent, Charles Wrase, and his wife Augusta Wrase.

On and prior to December 20, 1938, Charles Wrase and his wife owned jointly two parcels of land in the city of Detroit, free and clear of liens and incumbrances, and they had occupied one of such parcels as their homestead for about 30 years. They had two daughters, defendant Hilda Wrase Titsworth and Elsie Wrase Wood, since deceased, who was the wife of defendant Ezra A. Wood. On December 20, 1938, Charles Wrase and wife, as grantors, executed and acknowledged two quitclaim deeds, conveying the two parcels of land to their daughters "as tenants in common  *  *  *  subject to a life estate" reserved by the grantors. Such quitclaim deeds, after recording on December 23, 1938, were returned to the grantors Wrase and wife and were retained by them. On July 21, 1940, the daughter, Elsie Wrase Wood, died without issue, leaving a will devising her real and personal estate to her husband, defendant Ezra A. Wood.

On September 9, 1940, Charles Wrase, 84 years old, and his wife Augusta Wrase, 79 years old, filed bill of complaint against defendants Ezra A. Wood and their daughter, Hilda Wrase Titsworth. In their bill the Wrases alleged their ownership of the two parcels of land, the conveyance by quitclaim deeds to their daughters, and the death of their daughter, Elsie Wrase Wood. They also alleged that they received no consideration for such deeds. They stated in their bill:

"That it was the intention of plaintiffs (Wrase), grantors in said deeds, to convey to each of their said daughters one-half of the title to the real estate described in said deeds, *to be effective after the death of the grantors.* That it was the intention of plaintiffs, grantors in said deeds, to convey said parcels of real estate to the grantees, their daughters, only contingent upon the grantees surviving grantors, and it was also plaintiffs' intention that at any time the grantors desired to convey the properties to others, the grantors (grantees) would cooperate in such conveyance and sign whatever papers might be necessary to the end that grantors might convert said real estate into cash to meet their living expenses. That it was not intended by grantors in said deed that in the event of the death of either of the grantees prior to the death of the survivor of grantors that any estate would pass to any devisee or heirs at law of such deceased grantee."

The Wrases alleged further that the two quitclaim deeds in question were prepared and recorded by defendant Wood; and also that subsequent to the death of their daughter Elsie, they had made demand upon defendant Wood to reconvey to them any interest in the lands acquired by him from his deceased wife, but that he had refused to reconvey. Plaintiffs, in effect, prayed that the two quitclaim deeds of December 20, 1938, be set aside; that defendants Wood and Titsworth be decreed to have no right, title or interest in the lands; and that they be required to reconvey the same to plaintiffs.

The record indicates that defendant Hilda Wrase Titsworth did not appear and that her default was entered. However, when called as a witness during the trial, she stated that she was willing to reconvey her interest in the lands to her father Charles Wrase, as survivor of her deceased mother. Defendant Wood answered, denying that he requested

the Wrases to execute the deeds in question and denying that he either prepared or recorded the same. In his answer defendant Wood alleged that he took no part in the negotiations regarding the execution of such deeds but that the entire transaction was arranged between his wife Elsie and her parents.

Augusta Wrase died October 7, 1940. Her interest in the lands having passed to her surviving husband Charles Wrase, in pursuance of stipulation an order was entered December 16, 1940, that she be dropped as a party plaintiff. Such order also provided that Ezra A. Wood, as executor of the estate of his wife Elsie, be added as a party defendant. Plaintiff Charles Wrase died June 24, 1941, and upon suggestion of his death being filed, an order was entered continuing the case with Edward W. Schmalzriedt, administrator of his estate, as plaintiff. On December 31, 1940, Wood, as executor of his wife's estate, filed answer, in general denying plaintiff's right to the relief sought.

The court's opinion determining that the deeds in question were valid and that the bill should be dismissed, stated, in part:

"The court holds that there was no showing in this case which would justify a finding of a fiduciary relationship between the Wrases and the Woods, obligating the latter to exercise unusual good faith in dealing with the former. The court finds that this was the ordinary case of parents seeking to bestow their bounty upon their two daughters in a manner which seemed, at the time, satisfactory to them, and which was understood by them in its ordinary legal implications insofar as laymen in their position would be expected to comprehend the same. * * *

"The court finds as a fact that the deeds were presented to Mr. and Mrs. Wrase in good faith; that

they were explained to them, and understood by them, and that these deeds expressed the thought and desire which was in the mind of the grantors at the time they executed and delivered them.

"It is probably true that Mr. and Mrs. Wrase did not anticipate that their daughter, Elsie, would predecease them, and, therein, very probably, lies the explanation for this controversy. It is my finding that the Wrases intended to convey the property in question to their two daughters, reserving to themselves a life estate, and that that arrangement was entirely satisfactory to them, and expressed their intention and desire until the unexpected death of one of their daughters woke them to the realization that, under the law, a disposition of their property resulted which they possibly had not anticipated. It is elementary, of course, that a mistake as to law will not invalidate the act of a person who, at the time, was laboring under no mistake of fact, or who was not the victim of fraud, undue influence or other form of wrongdoing."

A decree was entered December 8, 1941, dismissing the bill of complaint without costs to either party. Plaintiff appeals from such decree. This being a chancery case, we consider the same *de novo*. The question presented is whether or not the two quitclaim deeds should be set aside on the ground of a mistake of law.

Defendants admit there was no consideration for the deeds in question. However, plaintiff does not charge either defendant with fraud, deceit or coercion in connection with their execution. Plaintiff's bill is based on the premise that the grantors Wrase and wife were mistaken as to the legal result of the deeds which conveyed title to their two daughters as tenants in common while reserving only a life estate to themselves. The case is somewhat novel in that the result will principally affect only

defendants Titsworth and Wood. In other words, if the deeds are set aside, the two parcels of property will then belong to the estate of Charles Wrase and, assuming there are no claims against such estate, will pass to defendant Titsworth as his surviving daughter; if the deeds are held valid, only a half interest will remain in the Wrase estate for the benefit of defendant Titsworth, and the remaining half will be retained by defendant Wood as devisee of his deceased wife Elsie. There was testimony that together the two parcels were worth about $6,500.

The record shows that on December 20, 1938, defendant Wood and his wife Elsie went to the home of her parents, Charles Wrase and wife, for the purpose of having the two deeds in question signed; that Elsie had previously had such deeds prepared; and that after some conversation the Wrases signed both deeds, and defendant Wood, who was a notary public, took their acknowledgments. The deeds were witnessed by defendant Wood and by one Stanley Fathers, who was not called as a witness. From the testimony it may reasonably be inferred that the daughter Elsie had discussed the matter of executing these deeds with her parents prior to the meeting on December 20, 1938. It appears that Mrs. Wrase was the business head of the family and, as one witness said, "She had a good head on her. She was an aggressive businesslike person for an old lady. There was nobody going to fool her." Charles Wrase spoke and read German and spoke but did not read English. He testified, in part:

"When the deeds were signed, Elsie was in the room with me and Mrs. Wrase, and Mr. Wood. * * *

"These deeds have been recorded in the county building here. * * * After I got them back (after

recording) they laid on the table for a while and after a while they were gone. My wife put them away. I took them out again after Elsie was dead; I never thought about the deed at all. It was dismissed until Elsie died. * * *

"After Elsie died, my wife asked Ezra Wood (defendant) about three or four times to deed the property back to us, when I was there. He told us, 'I am glad,' he says, 'I am glad to sign off. You always was good to me. I am glad to sign off,' but he didn't.

"Q. When you signed these deeds what was your intention? What did you think you were doing?

"A. I thought it should not go through probate court, that I should be dead it should go to Hilda and Elsie. I never thought it would go—I never thought a thing like that, I got authority when I like to sell the half of that house again to get more money. Now, I find out I could not do it."

Defendant Wood denied that he prepared or recorded the deeds, and he testified as to their execution by the Wrases, in part, as follows:

"With respect to the day the deeds were signed, * * * my wife asked me if I would go with her that night, that she and mother had arranged about deeding the property to her and Hilda, and with the right of use of it for the rest of their lives and wanted me to notarize and witness the deeds. * * * The four of us were together in the same room and there was some discussion prior to the signing of the deeds. There was a discussion between Mr. and Mrs. Wrase in my presence about the deeds in the German language. I do not understand German. * * * There was a discussion in English between my wife and her parents about this deed. Elsie told her that the deeds were ready to be signed. * * * The father was not much of a business man. Mrs. Wrase was always the business woman of the fam-

ily.  She explained it to father and told him usually
what was going on, and he did what he was asked
to do.  My wife was in the habit of transacting busi-
ness of this kind of her own accord without asking·
me about it.  * * *

"The old folks knew that we had come there for
the purpose of signing the deeds.  I think it was all
settled before we got there.  * * *  About the only
thing that was discussed is when I raised the ques-
tion, 'Are you sure this is the way you want these
made out?  Or would you like them made out so that
the one surviving would take all?'  My wife said,
'No, we have had legal advice on this, and this is the
way we want them.'  I said, 'O. K.' and we signed
the deeds.  I cannot recall that Elsie's mother had
anything to say about this survivor business.  I am
convinced beyond any question they knew what they
were doing; they were doing exactly what they
wanted to do, and understood fully the result of it."

The record indicates that the deeds were not read
to the Wrases before they signed them, and it ap-
pears that in such transaction they relied to quite
an extent upon their daughter Elsie.  Soon after
Elsie's death in July, 1940, the Wrases learned that
by her will she had devised her half interest in the
lands to her husband, defendant Wood.  Then for
the first time they raised the contention that the
deeds did not carry out their intended purpose and
that they had been mistaken as to the legal effect
and result.  There was testimony that on several
occasions after Elsie's death the Wrases requested
defendant Wood to reconvey to them his interest in
the lands and that he expressed a willingness to do
so.  However, Wood testified, in substance, that af-
ter discovering his wife's will devising her real es-
tate to him, he declined to make such reconveyance.
There was considerable testimony indicating that
following their daughter Elsie's death, the Wrases

were quite excited and perturbed when they learned that they had only a life estate in the lands.

The record indicates that the deeds were satisfactory to the Wrases and to everyone concerned until the unexpected death of the daughter Elsie. There was a sufficient delivery of the deeds, and undoubtedly no trouble would have arisen if both daughters had survived their parents. When questioned as to his intention in signing the deeds, Charles Wrase testified, ''I thought it should not go through probate court.'' It seems clear that the Wrases intended to vest title to the lands in their two daughters as tenants in common, while reserving a life estate to themselves.

From a careful study of the record we are satisfied that there was no affirmative showing of undue influence, coercion or unconscionable conduct exercised by the daughter Elsie and her husband, defendant Wood, upon her father and mother either prior to or at the time of the execution of the deeds in question. Furthermore, the testimony does not disclose such a fiduciary relationship between Elsie and her husband Wood and her parents as to place upon defendants the burden of proving the good faith and validity of the deeds.

The factual situation in the case of *Connor* v. *Harris,* 258 Mich. 670, cited and relied upon by plaintiff, clearly distinguishes it from the case at hand. Our holding in *Sinka* v. *McKinnon,* 301 Mich. 617, is directly applicable to the questions presented in the present case. We said (p. 626):

''The question is: Does the testimony establish such mistake of fact or law and such inequitable injustice to plaintiff as would authorize a court of equity to declare the deeds in question null and void?

"The rule that a *mistake of law* is not usually a ground for equitable relief is well established in this State. In the case of *Renard* v. *Clink,* 91 Mich. 1, 3 (30 Am. St. Rep. 458), Mr. Justice MONTGOMERY stated the following rule, which has been generally recognized in later decisions:

" 'Where parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, equity will not allow a defense, or grant a reformation or rescission, although one of the parties may have *mistaken or misconceived its legal meaning, scope, or effect. Martin* v. *Hamlin,* 18 Mich. 354 (100 Am. Dec. 181) ; *Lapp* v. *Lapp,* 43 Mich. 287.' "

In the case of *Crane* v. *Smith,* 243 Mich. 447, 450, Mr. Justice FEAD said:

"The deed was drafted by plaintiffs' attorney, upon full knowledge of the facts and claims. There was no showing that he made a mistake in stating its agreed terms. The mistake, if any, was purely one of law, 'an erroneous conclusion as to the legal effect of known facts.' 40 C. J. p. 1228. Mistake as to the legal effect of a written instrument, deliberately executed and adopted, constitutes no ground for relief in equity."

See, also, *Barr* v. *Payne,* 298 Mich. 85; *Walter* v. *Walter,* 297 Mich. 26; *Holmes* v. *Hall,* 8 Mich. 66 (77 Am. Dec. 444) ; 6 R. C. L. p. 628.

The rule applicable to mistakes of law in deeds and contracts is stated in 10 R. C. L. p. 315 as follows:

"There are two well-defined classes of mistakes of law in contracts: first, a mistake in law as to the legal effect of the contract actually made; and, second, a mistake in law in reducing to writing the con-

tract, whereby it does not carry out or effectuate the intention of the parties. In the former, * * * the contract actually entered into will seldom, if ever, be relieved against unless there are other equitable legal features calling for the interposition of the court; but in the second class, where the mistake is not in the contract itself, but terms are used in or omitted from the instrument which give it a legal effect not intended by the parties, and different from the contract actually made, equity will always grant relief unless barred on some other ground, by correcting the mistake so as to produce a conformity of the instrument to the agreement.''

See, also, *Russell* v. *Phillips,* 145 Mich. 268.

The fact that Charles Wrase and his wife may have been mistaken as to the legal result of the quitclaim deeds, which conveyed the lands to their two daughters as tenants in common, does not alone warrant the interposition of a court of equity. Furthermore, the testimony is not convincing that the deeds which conveyed the lands to the two daughters resulted inequitably or as an injustice to their parents as grantors. We conclude that the record shows no mistake of law or fact which would justify setting such deeds aside.

The decree of the trial court dismissing the bill of complaint is affirmed. Defendants shall recover costs of this court.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.