*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMANTHA A. NEWTON,

      Plaintiff-Appellant,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY, ERIC MOYER, and NYKIE MOYER,

      Defendants-Appellees.

FOR PUBLICATION
January 4, 2024
9:10 a.m.

No. 364569
Eaton Circuit Court
LC No. 2022-000382-CK

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

HOOD, P.J.

Plaintiff Samantha A. Newton (Newton) appeals as of right the December 2022 order of the trial court denying her motion for summary disposition under MCR 2.116(C)(10) and granting defendant Progressive Marathon Insurance Company's (Progressive) motion for summary disposition under MCR 2.116(I)(2). Newton sought a declaratory judgment that would have voided defendant Nykie Moyer's (Nykie) election for lower no-fault coverage under MCL 500.3009, which she made for her minor son, defendant Eric Moyer (Eric). We conclude that Nykie's election was valid under the terms of MCL 500.3009 and because she was not required to seek her minor son's authority for such an election. We affirm.

## I. BACKGROUND

This case started with Eric, a minor, crashing his 2005 Honda Accord into Newton and her motorcycle in November 2020. Eric, 17 years old at the time, drove northbound on South Clinton Street in Grand Ledge, Michigan. Newton rode her motorcycle southbound on the same street and stopped at a red light. When the light changed, Newton proceeded through the intersection, but Eric made a left turn in front of her and collided with her and her motorcycle, causing several injuries, including fractures to her hip and pelvis requiring surgery, fractures to her hand, and other injuries to her neck, back, and head.

Eric was the sole owner and titleholder of the Honda Accord, which Progressive insured through a no-fault policy that Eric's mother, Nykie, purchased. Nykie was listed on the application

as the "Applicant/Named Insured." But the policy declarations identified Nykie, Eric, and her other minor son as individuals covered by the policy.

Nykie signed the application on September 3, 2020, and the document indicates the policy was effective September 8, 2020, through March 8, 2021. (In other words, Eric was a minor at the time that Nykie signed the policy and at the time of the wreck.) With respect to the 2005 Honda Accord, Nykie elected bodily injury liability of $50,000 per person and $100,000 per occurrence, lower than the statutory defaults. Nykie confirmed that she received a list of available coverage options, that she understood that her coverage election applied to her "and any other person covered by this policy," and that the limits she chose would be effective as long as the policy was in effect or she changed those limits. By signing, Nykie acknowledged that she read and understood her choices and the "potentially severe risks" of selecting lower liability coverage described in the application.

The parties do not dispute that Eric was not involved in Nykie obtaining the policy from Progressive. Eric was a minor when Nykie obtained the policy from Progressive. Nykie testified that she "usually consulted" her children (Eric and her other son) "to just get" "PLPD" (personal liability and property damage) coverage, but she did not consult Eric when completing the application form for electing lower liability coverage.

In April 2022, Newton sued Progressive, Nykie, and Eric seeking declaratory relief under MCR 2.605. After describing the accident, her injuries, and the particulars of Nykie's policy with Progressive, Newton alleged that by enacting the higher default liability limits, the Legislature "recognized the potential increase in liability exposure" for vehicle owners and operators due to changes to personal-protection-insurance (PIP) benefits. Newton alleged that Eric, as owner of the Accord, did not elect the lower liability limits and he therefore "face[d] potential statutory liability for any negligent operation" of his vehicle. She alleged further that by electing the lower liability limit for Eric's vehicle, Nykie "waived and/or forfeited his right to the protection afforded by the default liability limits," noting that Michigan disfavors parents "attempt[ing] to negotiate contracts on behalf of minor children." Newton's concern was that Eric had "limited personal financial resources" to compensate injured individuals like her whose damages may extend beyond the coverage limits on his vehicle. She alleged that her damages from Eric's negligent operation of his vehicle "will greatly exceed the liability limits" of the policy covering his vehicle. Newton therefore requested as relief a declaratory judgment in her favor, requesting the court to "reform the insurance policy" to "include the 'default limits' established by MCL 500.3009," in other words, $250,000 per person and $500,000 per occurrence.

Progressive answered, largely denying or not admitting the complaint allegations. Among its affirmative defenses it claimed that Newton lacked standing, that Nykie's election was valid under MCL 500.3009(5), and that Newton improperly sought to expand the coverage limits beyond the unambiguous terms of the policy.

Newton moved for summary disposition under MCR 2.116(C)(10). She noted that the 2019 no-fault amendments, specifically MCL 500.3009, allow an insured to elect for lower liability limits, but this exposes at-fault drivers to potentially "enormous" liability. She argued that Nykie's election exposed Eric to such liability, and questioned whether a parent's choice should limit a minor's coverage, particularly where the default is greater. She contended that

-2-

Nykie's election of the lower liability coverage was "legally defective" because she had "no liability risk" with respect to ownership or operation of the Accord, and she had "no legally sufficient agency authority" to make the election. Newton argued further that Progressive had an obligation to inquire into whether Nykie was authorized to choose a lower liability limit for Eric's vehicle, but it did not do so.

Progressive responded and filed a countermotion for summary disposition under MCR 2.116(I)(2). Progressive argued that Newton was not insured under its policy with the Moyers, so she lacked standing to sue, unless she first obtained a judgment against Nykie (Progressive's insured). Second, it argued that because Newton was not a party to the contract between Progressive and Nykie, Newton did not have standing to seek reformation of the contract. Progressive argued that Newton could not satisfy the factual requirements for reformation. It also argued that contrary to Newton's position, MCL 500.3009(5) requires only that an applicant or named insured make coverage elections, not the owner of the covered vehicle. Accordingly, it asserted that Nykie, as the applicant *and* named insured, properly elected the lower liability coverage and it was not necessary for Eric, as the owner of the Accord, to make the election. Adding such a requirement, Progressive argued, would improperly read terms into the statute that the Legislature did not include.

Following a hearing, the trial court denied Newton's motion and granted summary disposition in favor of Progressive under MCR 2.116(I)(2). The court found that Nykie "checked the right boxes and achieved the lower insurance policies," noting that although Newton would not be "compensated for all [her] damages," "these [were] the legal choices that are allowed." The trial court concluded that Newton "could bring the declaratory action to reform the contract," but was "misguided . . . ." It found that Nykie "had legal authority to elect the lower default rates in her contract" for Eric's vehicle, and that because her son was a resident relative in the policy, "the contract stands as read." This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "A trial court may award summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Hambley v Ottawa Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365918); slip op at 3.

We review questions of statutory interpretation de novo. *Wells Fargo Rail Corp v State of Michigan*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 3.

The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Yopek v Brighton Airport Ass'n, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359065); slip op at 4-5 (quotation marks and citations omitted).]

### III. STANDING

At the threshold, Newton had standing to seek a declaratory judgment related to Eric Moyer's insurance coverage. Progressive argues that Newton did not have standing to sue Progressive unless and until she obtained a judgment against Progressive's insured, Eric and Nykie. We disagree.

Standing is a legal issue that this Court reviews de novo. *T & V Assoc, Inc v Dir of Health and Human Servs*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361727); slip op at 5. Like other justiciability issues, courts are required to address standing as the issue arises. See *id.* ("Because standing is an issue of justiciability, it may be raised at any time as an issue related to jurisdiction"); *Equity Funding, Inc v Village of Milford*, 342 Mich App 342, 349; 994 NW2d 859 (2022) (noting that courts must address justiciability of cases as the issue arises in case involving question of mootness).

"Whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *T & V Assoc, Inc*, ___ Mich App at ___; slip op at 5, quoting *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 585-586; 957 NW2d 731 (2020) (quotation marks and brackets omitted). That rule "incorporates the doctrines of standing, ripeness, and mootness . . . [.]" *T &V Assoc, Inc*, ___ Mich App at ___; slip op at 5. MCR 2.605 provides, in relevant part:

> (A) Power to Enter Declaratory Judgment.
>
> (1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

"Thus, to assert a claim for declaratory judgment under MCR 2.605, the plaintiff (1) must allege a 'case of actual controversy' within the jurisdiction of the court, and (2) the claimant must be an 'interested party seeking a declaratory judgment.' " *T & V Assoc, Inc*, ___ Mich App at ___; slip op at 6. An actual controversy exists when declaratory relief is required to "guide a party's future conduct in order to preserve that party's legal rights." *Id.* at ___; slip op at 6 (quotation marks and citation omitted). To find the existence of an actual controversy, the plaintiff must "plead and prove facts which indicate an adverse interest necessitating the sharpening of the issues raised."

*Id*. at ___; slip op at 6, quoting *Lansing Sch Ed Ass'n*, 487 Mich at 372 n 20 (quotation marks omitted). And although a court "is not precluded from reaching issues before actual injuries or losses have occurred," "there still must be a present legal controversy, not one that is merely hypothetical or anticipated in the future." *Id*. at ___; slip op at 6 (quotation marks and citation omitted).

An actual controversy exists here. Newton alleged that Nykie's election of lower liability limits for Eric's vehicle deprived him of the protection of the default, higher limits provided in MCL 500.3009, and that he had limited financial resources to compensate anyone injured by his negligent operation of his vehicle, "if those persons' damages exceed the liability limits of the insurance coverage for his motor vehicle." She alleged that she "suffered serious injuries" in the collision with Eric's vehicle and that her damages "will greatly exceed the liability limits" of the policy issued by Progressive. Newton requested a declaratory judgment asking the court to reform the policy to include the default limits in MCL 500.3009. She has therefore pleaded facts indicating "an adverse interest necessitating the sharpening of the issues raised." *T & V Assoc, Inc*, ___ Mich App at ___; slip op at 6.

The second requirement, that the party seeking the declaratory judgment must be an interested party, is also satisfied here. In the standing context, "a party's interest is sufficient if the party has a legally protected interest that is in jeopardy of being adversely affected" and a "special injury or right, or substantial interest that will be detrimentally affected in a manner different from the citizenry at large." *T & V Assoc, Inc*, ___ Mich App at ___; slip op at 6 (quotation marks and citations omitted). Newton is an interested party because she has a protected interest in compensation for her injuries stemming from the November 2020 accident with Eric that are in jeopardy of being adversely affected if Nykie's election of lower liability limits is deemed valid. Her interest is rooted in Progressive's potential liability if and when her bills exceed the coverage elected by Nykie. This is an interest specific to Newton and is thus different from the citizenry at large. Newton therefore had standing to seeking declaratory relief in this case. *Id*. See also *Mich Educational Employees Mut Ins Co v Executive Risk Indemnity, Inc*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2004 (Docket No. 242967), p 4 ("[T]here is no material difference between the insurer asking the court for declaratory relief and the injured party asking the court for declaratory relief. In either situation, the standing requirement for the injured party is still satisfied because the interest in the litigation is present regardless of who institutes the action.").[1]

Newton has satisfied the requirements of MCR 2.605, so she had standing to seek a declaratory judgment in this case.

## IV. MCL 500.3009(5) PERMITS A PARENT-INSURED'S ELECTION FOR LOWER LIMITS FOR CHILD-INSURED

---

[1] Unpublished decisions are not binding on this Court, but the Court may consider them for their persuasive value. See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 9, citing MCR 7.215(C)(1); *Broz v Plante Moran, PLLC*, 331 Mich App 39, 47 n 1; 951 NW2d 64 (2020).

Newton argues that Nykie's election purchasing a lower level of coverage for Eric was invalid because she did so without Eric's authority or consent. We disagree. The plain terms of MCL 500.3009(5) allow the applicant or named insured to elect for lower levels of no-fault coverage. Here, Nykie was both, and no other insured on the policy was able to purchase no-fault insurance. Considering that Eric was a minor at the time of Nykie's election and the collision, holding otherwise would effectively allow a minor driver to dictate the terms of their parent's no-fault contracts or cause parents to choose not to insure their child drivers.

## A. MINORS IN CONTRACT AND TORT

At the outset, we observe that this case and its outcome are shaped by the fact that Eric was a minor during each consequential event in the case: the time Nykie made the coverage elections; the time of the collision; and the duration of the policy's coverage period. These facts lead to three foundational legal conclusions that drive the case's outcome: Eric could own a car; he could be sued related to his ownership and operation; but he could not purchase his own no-fault insurance.

Minors occupy a unique and awkward space in contract and tort. Minors seven-years-old and older can be sued for negligence and intentional torts. *Queens Ins Co v Hammond*, 374 Mich 655, 657-658; 132 NW2d 792 (1965). See also *Baker v Alt*, 374 Mich 492; 132 NW2d 614 (1965). Minors lack the capacity to contract outside of certain common-law exceptions that are not at issue here. *Woodman v Kera LLC*, 486 Mich 228, 236; 785 NW2d 1 (2010) (stating the well-established principle, collecting cases, and noting that contracts with minors are not void, but voidable). See also *id*. at n 14 ("The common law exception to this rule is that a minor can bind himself by contract for 'necessaries.' "); *In re Dzwonkiewicz's Estate*, 231 Mich 165, 167; 203 NW2d 671 (1925) (defining "necessaries" as items that answer the bodily needs of a minor, "without which the individual cannot reasonably exist"). This includes an inability to enter contracts for no-fault insurance. Cf. *Woodman*, 486 Mich at 236 & n 14; *In re Dzwonkiewicz's Estate*, 231 Mich at 167. Parents, however, can contract for their minor children, and they have an insurable interest in their children's no-fault coverage. See *MemberSelect Ins Co v Flesher*, 332 Mich App 216, 229-230; 956 NW2d 535 (2020).

A minor can legally drive a motor vehicle after 14 years and 9 months of age. See MCL 257.310e (providing graduated driver licensing framework). A minor can even own an automobile. *Semmens v Floyd Rice Ford, Inc*, 1 Mich App 395, 401; 136 NW2d 704 (1965), quoting *Parks v Pere Marquette R Co*, 315 Mich 38, 44; 23 NW2d 196 (1946).[2] Michigan law, however, prohibits persons from knowingly selling a motor vehicle to an unemancipated minor without the written consent of a parent. See MCL 750.421c (providing that such sales constitute a misdemeanor); See also Michigan Secretary of State, *Parental Consent to Sell a Vehicle to a*

---

[2] Although *Semmens* is not *strictly* binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 10 n 2.

*Minor*, B-32 (05/11). Despite the aforementioned inability to purchase no-fault insurance, if a minor owns a car, they are required to carry it. See MCL 500.3101.

These basic legal principles place some basic parameters on our case. Eric could, and did, own a car, but only with a parent's (i.e., Nykie's) permission. Despite being a minor, Eric could be sued for negligence, gross negligence, or intentional torts, including those arising out of his driving. He could not buy his own no-fault insurance, but his mother, Nykie, could buy insurance coverage for him.

### B.  UNDER MCL 500.3009 A PARENT-APPLICANT OR PARENT-NAMED INSURED MAY ELECT FOR LOWER COVERAGE FOR THEIR MINOR CHILD

Newton argues that Eric did not authorize Nykie to elect lower liability limits for the vehicle owned solely by him. She contends that under MCL 500.3009, the undefined term "applicant" should include any person with potential liability for the insured vehicle or with agency authority from another with liability for the vehicle. She asserts that because Nykie admitted she did not have Eric's authorization to elect the lower liability limits, Nykie acted outside the scope of any agency authority she may have had. We disagree. The plain language of MCL 500.3009(5) allowed Nykie to elect lower liability limits for Eric's vehicle.

MCL 500.3009(1) provides, in relevant part:

> [A]n automobile liability or motor vehicle liability policy that insures against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle must not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:
>
> (a) Before July 2, 2020, a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and after July 1, 2020, a limit, exclusive of interest and costs, of not less than $250,000.00 because of bodily injury to or death of 1 person in any 1 accident.
>
> (b) Before July 2, 2020 and subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and after July 1, 2020, and subject to the limit for 1 person in subdivision (a), a limit of not less than $500,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident. [MCL 500.3009(1)(a) and (b).]

The liability limits provided in MCL 500.3009(1)(a) and (b) are subject to MCL 500.3009(5) through (8). See MCL 500.3009(1). Subsections (5), (7), and (8) are particularly relevant here and provide:

> (5) After July 1, 2020, an applicant for or named insured in the automobile liability or motor vehicle liability policy described in subsection (1) may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower

than $50,000.00 under subsection (1)(a) and $100,000.00 under subsection (1)(b). To exercise an option under this subsection, the person shall complete a form issued by the director and provided as required by section 3107e, that meets the requirements of subsection (7).

\* \* \*

(7) The form required under subsection (5) must do all of the following:

(a) State, in a conspicuous manner, the risks of choosing liability limits lower than those required by subsection (1)(a) and (b).

(b) Provide a way for the person to mark the form to acknowledge that he or she has received a list of the liability options available under this section and the price for each option.

(c) Provide a way for the person to mark the form to acknowledge that he or she has read the form and understands the risks of choosing the lower liability limits.

(d) Allow the person to sign the form.

(8) After July 1, 2020, if an insurance policy is issued or renewed as described in subsection (1) and the person named in the policy has not made an effective choice under subsection (5), the limits under subsection (1)(a) and (b) apply to the policy. [MCL 500.3009(1), (5), (7), and (8).]

"Thus, whether one is applying for insurance, or is currently subject to a policy (a 'named insured'), subsection (5) ties the ability to obtain different coverage limits to the July 1, 2020, date, which can be accomplished by filing or requesting it under subsection (5)." *Progressive Marathon Ins Co v Pena*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 358849); slip op at 4, lv pending.

Here, Nykie's policy with Progressive was issued and effective on September 8, 2020. Accordingly, under the preceding provisions, Nykie's policy had to include the $250,000 per person and $500,000 per occurrence limits included in MCL 500.3009(1)(a) and (b) unless "an applicant for or named insured" in the policy chose the lower limits allowed under MCL 500.3009(5). Nykie was both the applicant for, and a named insured in, the insurance policy with Progressive. She elected the lower liability limits of $50,000 per person and $100,000 per occurrence permitted by MCL 500.3009(5) for Eric's vehicle, and she did so after filling out a form that complied with MCL 500.3009(7).

The trial court did not err in concluding that Nykie had the legal authority under MCL 500.3009(5) to elect the lower liability limits for Eric's vehicle. The plain language of MCL 500.3009(5) provides that only "an *applicant for or named insured* in the automobile liability or motor vehicle liability policy described in subsection (1) may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower than $50,000.00 under subsection (1)(a) and $100,000.00 under subsection (1)(b)." (Emphasis added.) Nykie was the applicant for *and*

-8-

the named insured in the policy with Progressive. She therefore had statutory authority to elect lower liability limits for Eric's vehicle, and the trial court did not err in reaching that conclusion.

Newton contends, however, that MCL 500.3009(5) requires the *owner* of the vehicle to make the election or, at the very least, that this Court should expansively construe the term "applicant" to require the individual electing lower limits for a vehicle owned by someone other than the applicant or named insured—like Eric here—to have authorization from the vehicle owner to elect that lower limit. As Progressive points out, however, the plain language of the statute does not include the term "owner" and to add that requirement, or to otherwise require the applicant or named insured to obtain authorization from the owner of the vehicle before electing lower liability limits, would exceed this Court's authority. See *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 213 n 10; 731 NW2d 41 (stating that "courts may not rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature" and noting that courts have "no authority to add words or conditions to [a] statute"). A "named insured" is "one" who "is currently subject to a policy . . . ." *Pena*, ___ Mich App at ___; slip op at 4. See also *Black's Law Dictionary* (11th ed) (defining "applicant" as "[s]omeone who requests something" and "named insured" as "[a] person designated in an insurance policy as the one covered by the policy"). Here, Nykie is both an applicant and the named insured in the Progressive policy. Because Nykie falls squarely within the statutory language as both an applicant and the named insured, Newton's argument necessarily fails.[3]

Newton argues that Nykie's status as Eric's parent does not by itself confer agency authority to Nykie and that because she did not otherwise have Eric's permission to elect the lower liability limits, her election of them was invalid. Newton, asserting that Nykie, as Eric's mother, had no authority to act on Eric's behalf, analogizes this case to *Woodman*, 486 Mich at 228. There,

---

[3] There is, however, a question of whether the term "named insured" encompasses more than just individuals an insurer labels "named insured" on a policy, as Nykie is here. Or if it includes any individual insured on a policy and identified by name: those who might otherwise be called "listed insured" or "other insured." We observe that the no-fault act does not defined the term "named insured." See MCL 500.3101(3).

This Court may also at some point have to address whether each named insured can choose the applicable liability limits for themselves, or if one named insured can opt for those limits for any other individuals covered by the policy. But doing so is unnecessary here because this case involves minors, and minors lack the capacity to contract. *Woodman*, 486 Mich at 236. Parents can contract for their minor children, and they have an insurable interest in their children's coverage. See *MemberSelect Ins Co v Flesher*, 332 Mich App 216, 229-230; 956 NW2d 535 (2020). Newton argues that Nykie, as a parent, could not opt for lower coverage limits for her son. Followed to its logical end, however, Newton's position would lead to an absurd result that would essentially create a backdoor to allow a minor to contract in the no-fault context. Although Eric could not purchase his own no-fault policy, his election for a higher level of coverage would force Nykie to enter a contract she did not choose. In other words, Nykie would have to choose between paying higher premiums if Eric did not want the lower liability limits or not insuring his vehicle at all.

the Michigan Supreme Court held that parents have no authority to waive, release, or compromise a claim belonging to their child. *Id*. at 242-245. *Woodman* is distinguishable. It involved a child who was injured after jumping off a slide in an indoor play area during a party and broke his leg. *Id*. at 234. Before the party, however, the child's father signed a liability waiver on his son's behalf. *Id*. at 233. The Court recognized the "well-established . . . common law rule" that minors "lack[] the capacity to contract" and noted that had the child signed the waiver, the defendant could not enforce the waiver unless the child confirmed it once he reached the age of majority. *Id*. at 236-237. The Court then held that the father in *Woodman* could not waive his minor child's claim, i.e., he did not have the authority to contractually bind his son via the waiver. *Id*. at 243-244.

This case is different. Nykie did not seek to waive, release, or otherwise compromise a claim or defense belonging to Eric. That is, she did not sign away a claim or defense like the parent in *Woodman*. Nykie is not tying Eric's hands in terms of which defenses are available to him, but is instead simply electing a lower liability coverage than the default under the statute. She was authorized to do so by operation of the plain language of MCL 500.3009. And although Nykie's election of lower limits had the potential to expose Eric to more liability in the event of a collision, that is a risk she accepted and that, again, was allowed under the relevant statutory language. See MCL 500.3009(5). See also *MemberSelect Ins Co v Flesher*, 332 Mich App 216, 229-230; 956 NW2d 535 (2020) (declining to void an insurance policy procured by a parent for her adult child because she had "a sufficient interest in the well-being of her adult child").[4] For these reasons *Woodman* is distinguishable and Newton's reliance on it is misplaced.

In sum, Nykie's election was valid. She was both the "named insured" and the "applicant" as contemplated by MCL 500.3009(5), entitling her to make the policy elections. Because it was Nykie's contract, and because she had an insurable interest related to her minor son, she was authorized to enter the contract and opt for varying levels of coverage. Because this case involves a parent buying car insurance for their minor child, and opting for lower coverage, we can resolve it on these narrow grounds. Granting Newton's requested relief here would yield an absurd result

---

[4] *MemberSelect* has a similar factual background to this case, though it involves an adult child on a parent's insurance policy. There, one of the defendants, Nicholas Fetzer, hit another of the defendants, Kenneth Flesher, with his GMC Yukon as Flesher drove his motorcycle. *MemberSelect*, 332 Mich App at 218-219. Though Fetzer owned the Yukon, his mother was identified in the insurance policy covering the vehicle as the "principal named insured . . . ." *Id*. at 219. The plaintiff, MemberSelect Insurance Company, brought a declaratory action seeking a determination that the mother "had no insurable interest in the Yukon and that the policy covering it was therefore void." *Id*. The trial court denied MemberSelect's motion for summary disposition related to that issue, finding that the mother "had an insurable interest[.]" *Id*. at 219-220. In affirming the trial court, this Court concluded that the mother "had a sufficient interest in the well-being of her adult child that we should not void her insurance policy on public-policy grounds." *Id*. at 229. It further explained that "the interest of a parent in an adult child's welfare, including such aspects as being covered for potential injury, being protected from financial ruin from injuring another, even the avoidance of civil infraction or other legal penalties for driving while uninsured, is sufficient to avoid temptations and social ills of 'wager policies.' " *Id*. at 229-230.

of allowing minor drivers to constrain their parent's ability to contract for their own insurable interests. The trial court did not err in concluding that the election was valid.

## V. REFORMATION AND APPLICATION OF MCL 500.3012

Newton argues that because Nykie's election was invalid (as argued above), we should construe the policy as including the statutory bodily injury liability limits contained in MCL 500.3009. Essentially, she asks this Court to use the statutory remedy contained in MCL 500.3012 (allowing treatment of policy as compliant with Michigan law even if the terms of the written policy are inconsistent with Michigan law) to modify the coverage limits in the policy. Newton is not seeking common-law reformation as Progressive alleges, but is instead asking this Court to apply MCL 500.3012 more broadly than its terms permit to incorporate the lower liability limits in MCL 500.3009 because she believes Nykie's election of those lower limits was improper. But because the election of lower liability limits was proper under MCL 500.3009, as described above, MCL 500.3012 is not implicated. If Newton were seeking common-law reformation, however, she would be unable to satisfy its requirements.

Newton relies on MCL 500.3012 as a basis for incorporating the default limits of MCL 500.3009(1)(a) and (b) into the policy. MCL 500.3012 provides, in relevant part:

> Such a liability insurance policy issued in violation of [MCL 500.3004 through MCL 500.3012 of the no-fault act] shall, nevertheless, be held valid but be deemed to include the provisions required by such sections, and when any provision in such policy or rider is in conflict with the provisions required to be contained by such sections, the rights, duties and obligations of the insured, the policyholder and the injured person shall be governed by the provisions of such sections[.]

"[T]he basic purpose of [MCL 500.3012] is to treat an insurance policy that an insurer issues purporting to be a Michigan policy that complies with Michigan law as such even if the written terms of the policy are inconsistent with Michigan law." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 51; 988 NW2d 797 (2022) (quotation marks, citation, and emphasis omitted).

Because MCL 500.3009 allowed Nykie to elect lower liability limits for Eric's vehicle, we reject Newton's reliance on MCL 500.3012. For MCL 500.3012 to apply, the Progressive policy must have been issued in violation of one of the provisions of MCL 500.3004 through MCL 500.3012. Here, Newton relies on MCL 500.3009 as the triggering provision, arguing that although Nykie's election under that statute was invalid because she did not have Eric's authorization, MCL 500.3012 should apply. Newton therefore argues that because of the alleged violation of MCL 500.3009, this Court should hold the policy valid but deem it to include the default limits in MCL 500.3009(1)(a) and (b). As stated, there was no violation of MCL 500.3009. Nykie, as both the applicant and named insured in the policy, was statutorily authorized to elect lower liability limits for the vehicles covered by her policy, including Eric's Honda Accord. Because there was no violation of MCL 500.3009, MCL 500.3012 does not apply.

Again, we do not read Newton's request as one for common-law formation; if it were, she would not be entitled to relief. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake,

accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). "Courts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 24; 592 NW2d 379 (1998) (quotation marks and citations omitted). But a contract drafted as intended by the parties will not be reformed simply because the parties were mistaken about the contract's legal effect. *Schmalzreidt v Titsworth*, 305 Mich 109, 119; 9 NW2d 24 (1943). A mistake in the drafting of an instrument, such that it does not reflect the parties' agreement, however, may justify reformation to conform with the parties' intentions. *Id*. at 119-120. In the case of a unilateral mistake, reformation may be warranted when fraud induces to mistake, or when a party knew the contract did not accurately represent the other party's intentions and concealed that misapprehension. *Johnson Family Ltd Partnership*, 281 Mich App at 380. "Reformation of written instruments may be had by the immediate parties and by those standing in privity with them." *Biondo v Ridgemont Ins Agency, Inc*, 104 Mich App 209, 212; 304 NW2d 534 (1981).

Reformation is inappropriate here for two reasons. First, Newton was not a party to the contract between Progressive and Nykie, nor was she in privity with them. See *Biondo*, 104 Mich App at 212-213 (concluding that the appellant insurance agent was neither an immediate party to nor in privity with either party to the contract and thus had no standing to seek reformation). Second, Newton does not allege and cannot otherwise establish that there was a mistake or fraud in the drafting of the document. See *Johnson v USA Underwriters*, 328 Mich App 223, 234; 936 NW2d 834 (2019) (noting reformation may arise if a mutual mistake of fact, or mistake on one side and fraud on the other, is established by clear and convincing evidence).

To the extent Newton relies on Nykie's apparent misunderstanding about the effect of the no-fault amendments on the default liability limits and her choice of the lower liability limits, we reject that reliance for two reasons. First, reformation is not appropriate when there is a mistake of law, i.e., "a mistake by one side or the other regarding the legal effect of an agreement . . . ." *Johnson*, 328 Mich App at 236 (quotation marks and citation omitted); see also *id*. at 234-235. Second, the application for lower liability coverage explains the default limits, her ability to select a higher or lower limit, and the risk of choosing lower liability limits. By signing the application, she acknowledged that she read the form and understood her choices and the potential risks.

The trial court did not err in denying Newton's requested relief. Had she requested common law reformation, she would not be entitled to it. We understand her request as a request to read the statute so broadly as to effectively rewrite it. The trial court did not err in denying that requested relief.

We affirm.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney